**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MICHELE RICCI** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **02-CV-4330** |
| | : | |
| **AETNA, INC. d/b/a AETNA U.S.** | : | |
| **HEALTHCARE  and AETNA LIFE** | : | |
| **INSURANCE COMPANY** | : | |
| | : | **Electronically Filed** |
| **Defendants.** | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of _____, 2002, upon consideration of the

Motion for Summary Judgment of Aetna, Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life

Insurance Company, and any response thereto, it is hereby **ORDERED** that said Motion is

**GRANTED**.   Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**, and

judgment is hereby entered in favor of Defendants.


BY THE COURT:


_____

Savage, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELE RICCI** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **02-CV-4330** |
| | : | |
| **AETNA, INC. d/b/a AETNA U.S.** | : | |
| **HEALTHCARE and AETNA LIFE** | : | **Electronically Filed** |
| **INSURANCE COMPANY** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANT AETNA INC. d/b/a/**
**AETNA U.S. HEALTHCARE AND AETNA LIFE INSURANCE COMPANY**

Defendants, Aetna Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life Insurance Company ("Aetna"), by and through its undersigned attorneys, hereby files the following Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 54, and for the reasons stated in the accompanying Memorandum of Law, incorporated herein as if more fully set forth.  Aetna also incorporates by reference as if more fully set forth its Statement of Undisputed Facts, filed simultaneously herewith.

WHEREFORE, Aetna respectfully requests this Court to grant its Motion for Summary Judgment, to dismiss Plaintiff's claims with prejudice, and to award such other and further relief as the Court deems just and proper.

Respectfully submitted,

OF COUNSEL:                              /s/ Patricia C. Collins
ELLIOTT REIHNER
SIEDZIKOWSKI & EGAN, PC                  PATRICIA C. COLLINS
                                         Union Meeting Corporate Center V
                                         925 Harvest Drive
                                         Blue Bell, PA  19422
                                         977-1000

DATED: July 28, 2003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                          :
**MICHELE RICCI**                         :
                                          :       **CIVIL ACTION**
                **Plaintiff,**            :
                                          :
        **v.**                            :       **02-CV-4330**
                                          :
**AETNA, INC. d/b/a AETNA U.S.**          :
**HEALTHCARE  and AETNA LIFE**            :       **Electronically Filed**
**INSURANCE COMPANY**                     :
                                          :
                **Defendants.**           :
_____          :

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANT AETNA INC. d/b/a/**
**AETNA U.S. HEALTHCARE AND AETNA LIFE INSURANCE COMPANY**

Defendants, Aetna Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life Insurance Company ("Aetna"), by and through its undersigned attorneys, hereby submits the following Memorandum of Law in Support of Aetna's Motion for Summary Judgment.  Plaintiff claims that Aetna violated the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132(a)(1)(B), when it determined that Plaintiff was not totally disabled as defined by the applicable long term disability plan.  The material facts regarding whether or not Aetna abused its discretion in denying Plaintiff benefits are not in dispute, and under applicable law this Court cannot substitute its judgment for that exercised by Aetna in its capacity as claims administrator. Plaintiff's claim was properly terminated because she was not being treated for a physical condition as required by the Plan, but rather was receiving treatment for a mental condition, and

her benefits for that kind of disability were exhausted. Therefore, this Court must enter summary judgment in Aetna's favor.

Further, this Court must grant summary judgment in favor of Aetna on Plaintiff's "bad faith" claim. As a matter of law, Plaintiff's "bad faith" claim is preempted by ERISA. Further, the undisputed facts demonstrate that there is no evidence to support such a  claim.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The purposes of summary judgment are to "isolate and dispose of factually insupportable claims or defenses" and to "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. at 323-24, 327 (1986).  Summary judgment is appropriate and there is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

Although Plaintiff may be entitled, for purposes of Aetna's Motion for Summary Judgment, to have evidence viewed in the light most favorable to her, the only inferences to which she is entitled are reasonable inferences.  See Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 588 (1986) ("To survive a motion for summary judgment, ... Respondents in this case ... must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents.")

## II.    AETNA IS ENTITLED TO ABUSE OF DISCRETION STANDARD

It is well settled under <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), that if the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, that decision must be reviewed under an "abuse of discretion" or "arbitrary and capricious" standard.  <u>Bruch</u>, 489 U.S. at 115; <u>Gillis v. Hoescht Celanese Corp.</u>, 4 F.3d 1137, 1141 (3d Cir. 1993); <u>Abnathya v. Hoffmann-La Roche, Inc.</u>, 2 F.3d 40, 44-45 (3d Cir. 1993); <u>Kotrosits v. GATX Corp.</u>, 970 F.2d 1165, 1171 (3d Cir. 1992); <u>Cini v. Paul Revere Life Ins. Co.</u>, 50 F.Supp.2d 419, 423 (E.D.Pa. 1999); <u>Adamo v. Anchor Hocking Corp.</u>, 720 F. Supp. 491, 498-99 (W.D. Pa. 1989); <u>Grabski v. Aetna Inc.</u>, No. 98-677, slip opinion at p. 5 (E.D. Pa. Mar. 31, 1999).

Discretionary authority may be implied by a plan's terms even if not granted expressly. <u>Luby v. Teamsters Health, Welfare, and Pension Trust</u>, 944 F.2d 1176, 1180 (3d Cir. 1991). Rather, it may be implied from the policy's terms as a whole.  <u>Nolen v. Paul Revere Life Ins. Co.</u>, 32 F.Supp.2d 211, 214 (E.D.Pa. 1998); <u>Friess v. Reliance Standard Life Ins. Co</u>, 122 F.Supp.2d 566, 572, 573 (E.D.Pa. 2000).

The Plan places the authority to make determinations regarding whether or not a person is disabled under the terms of the plan, and therefore entitled to benefits, solely and completely with Aetna.  AR 414; Exhibit "A" at p. 2, 3, 6, 11, 15.  Aetna has the sole authority under the Plan to make those determinations.  Accordingly, the "arbitrary and capricious" standard of review applies.

Under the "arbitrary and capricious" standard of review, the Court may overturn Aetna's decision to deny Plaintiff's long term disability benefits only if the decision is without reasons, unsupported by substantial evidence, or erroneous as a matter of law.  <u>Abnathya v. Hoffmann-La</u>

Roche, Inc., 2 F.3d 40, 44-45 (3d Cir. 1993); Pokol v. E.I. duPont de Nemours and Co., 963 F.

Supp. 1361, 1370 (D.N.J. 1997). Unless the decision is irrational and not based on consideration

of the relevant factors, the Court must uphold Aetna's decision. Moats v. United Mine Workers

of America Health and Retirement Funds, 981 F.2d 685, 687 (3d Cir. 1992). The Court's scope

of review is thus narrow, and the Court is not free to substitute its own judgment for that of

Aetna in determining eligibility for plan benefits. Abnathya, 2 F.3d at 45; Moats, 981 F.2d at

687. The Court must defer to Aetna unless it is clear that the decision is not supported by the

evidence in the record or that the administrator has failed to comply with the procedures required

by the Plan. Abnathya, 2 F.3d at 48.

Under the mandated abuse of discretion standard of review, the only facts material to

resolution of this matter are:

- whether Aetna terminated Plaintiff's long term disability benefits with reason; **or**

- whether Aetna terminated Plaintiff's long term disability benefits with the support of substantial evidence in the record; **or**

- whether Aetna terminated Plaintiff's long term disability benefits with consideration of the relevant factors; **or**

- whether Aetna terminated Plaintiff's long term disability benefits in compliance with the procedures required by the Plan.

The undisputed facts outlined above clearly illustrate that there is no genuine issue as to any of

these facts. Aetna terminated Plaintiff's long term disability benefits based on substantial

evidence and in complete compliance with the terms of the Plan.

Pursuant to Pinto v. Reliance Standard Life Insurance Company, 214 F.3d 377 (3d Cir.

2000), Aetna acknowledges that, as the insurer for the Plan, it both funded and administered

claims for long term disability benefits under the Plan.  Accordingly, under the Third Circuit's holding in <u>Pinto</u>, a more heightened degree of scrutiny may apply.  <u>Id</u>. at 387-88.  However, this does not mean that the Court should abandon its deferential approach.  Instead, <u>Pinto</u> instructs the Court to consider the nature and degree of *apparent* conflicts with a view to shaping its arbitrary and capricious review of the benefits determination.  <u>Id</u>. at 393.  The greater the evidence of actual conflict shown during the claim determination process, the less deferential the standard of review.  <u>Id</u>.  Accordingly, the Court should review the decision-making process to determine whether the insurer's theoretical[1] interest in denying claims became more than theoretical, as shown by a faulty decision-making process, or a decision in blatant conflict with the evidence in support of payment of the claim.. <u>Id</u>

In this case, there is nothing more than this theoretical (and therefore insufficient) interest.  Indeed, the only evidence of supposed conflict is the fact that Aetna did function as both funder and claim administrator of the Plan.  But as shown below, there is no evidence of any anomalies or improprieties in the process of reviewing Plaintiff's claim, and Aetna's decision is not in conflict with the evidence presented to it, but fully consistent with that evidence.  In fact, the undisputed facts illustrate that Aetna followed Plan procedures, and provided Plaintiff a full and fair review of her claim and appeal.  Accordingly, the Court should review the case under the arbitrary and capricious standard of review, and give great deference to Aetna's determination.

Further, even if this Court were to apply a *de novo* standard of review, arriving at its own benefit determination based on the substantial record evidence, <u>Luby</u>, 944 F.2d at 1185, the court

---

[1] "Theoretical" because insurers are in the business of paying claims, and would quickly lose all business if they found ways to deny claims that are properly payable.  The practical  reality, is that it is not in their self-interest to "find " ways to deny valid claims.

would have no option but to determine that Plaintiff does not meet the requirements of the terms of the Plan for entitlement to disability benefits.

## III.   AETNA PROPERLY DENIED PLAINTIFF LONG TERM DISABILITY BENEFITS.

Plaintiff was not disabled under the terms of the Plan at the time that her benefits were terminated. A claimant is only disabled under the Plan during a "Certified Period of Disability," as determined by Aetna. A "Certified Period of Disability" will end after twenty-four months of benefits if the claimant's disability is caused **to any extent** by a mental condition. A "Certified Period of Disability" will also end if the claimant is no longer under the care of a physician for the disabling condition.

Here, it is undisputed that Plaintiff sought disability benefits due to Chronic Fatigue Syndrome, a sleep disorder, and somatoform disorder.[2] Four physicians who examined Plaintiff or her medical records stated that there was no objective evidence of Chronic Fatigue Syndrome. AR 321, 343, 345, 370. It is undisputed that Plaintiff **only sought treatment from a psychiatrist** for what all parties will agree is the physical condition of Chronic Fatigue Syndrome.

It undisputed that, from the beginning of her disability, Plaintiff sought treatment from a psychiatrist only. Only a psychiatrist provided medical information to Aetna about Plaintiff in the form of Attending Physician Statements and Functional Capacity Evaluation Forms. No physician even performed the basic blood tests necessary to rule out conditions that mimic Chronic Fatigue Syndrome. When Aetna requested the results of these blood tests, based on the recommendation of an IME, Dr. Schwartz, Plaintiff's psychiatrist, stated that he was only treating Plaintiff for the psychological / psychiatric "sequelae" of her condition. Plaintiff never

---

[2] Plaintiff's psychiatrist later stated that he felt she was unable to work due to her Chronic Fatigue Syndrome and not due to her somatoform disorder.

provided the results of those blood tests, and never sought treatment for the physical condition of Chronic Fatigue Syndrome.   Under the terms of the Plan, Plaintiff was not under the care of a physician for her "disabling condition":  Chronic Fatigue Syndrome.

Accordingly, for the entire period of her disability, Plaintiff **never** received treatment from a physician for a **physical condition.**   The treatment Plaintiff did receive was from a psychiatrist, Dr. Schwartz, for undifferentiated somatoform disorder or the "sadness and anxiety" caused by her Chronic Fatigue Syndrome.  This is simply not enough to qualify as treatment for a physical condition.

While Dr. Schwartz was treating Plaintiff for the sadness and anxiety she experienced from  her chronic fatigue, no physician was treating Plaintiff for the underlying Chronic Fatigue Syndrome itself.  The fact that a claimant might be sad or anxious as a result of a disability, and seek treatment for that mental condition, does not excuse the claimant from complying with the terms of the plan and seeking treatment for the disabling condition.  Certainly a  person suffering from cancer, for example, experiences "sadness and anxiety," however, treatment for sadness and anxiety is not treatment for the underlying condition of cancer.   And Aetna would be required under the terms of the Plan, to require evidence from the cancer claimant regarding the diagnosis and treatment of his cancer in order to continue to certify that he was disabled.

Here, Plaintiff sought no treatment at all for the physical condition of Chronic Fatigue Syndrome.  She or her physician did not even provide basic blood tests relevant to diagnosis of the condition.   Aetna then reviewed her claim as a disability caused by a mental condition because she was under the care of a physician for undifferentiated somatoform disorder or sadness and anxiety – clearly mental conditions.  But even if Plaintiff was disabled under the

terms of the plan based on a mental condition, her benefits for that type of condition were exhausted years before.

Because Plaintiff was not under the care of a physician for her physical condition of Chronic Fatigue Syndrome, and because Plaintiff's mental disability benefits were exhausted, Aetna properly terminated her benefits.

## IV.    PLAINTIFF'S "BAD FAITH" CLAIM FAILS AS A MATTER OF LAW

Plaintiff's Amended Complaint seeks damages against Aetna based on Plaintiff's alleged entitlement to benefits.  Plaintiff seeks relief under Pennsylvania's "bad faith" statute.  However, for the reasons discussed below, Plaintiff's bad faith claim is preempted by ERISA.  Further, the undisputed facts demonstrate that Plaintiff cannot present evidence of any bad faith on the part of Aetna.

### A.    Plaintiff's Bad Faith Claim Against Aetna Which Is Based on an Alleged Denial of Benefits to Plaintiff Is Preempted by ERISA.

It is beyond dispute that state common law claims to recover benefits due under an employee welfare benefit plan fall directly under § 502(a)(1)(B) of ERISA, which provides an exclusive civil enforcement mechanism for resolution of such disputes.  E.g., Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63, 107 S. Ct. 1543, 1546 (1987).  Section 502(a)(1)(B) provides:

A civil action may be brought --

(1)    by a participant or beneficiary --
. . .

(b)    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Plaintiff claims that Aetna failed to provide benefits.   In the case of a claim for benefits due under an employee welfare benefit plan, the exclusive civil enforcement mechanism set forth in § 502(a)(1)(B) of ERISA preempts Plaintiff's state law claims against Aetna.  See e.g., Metropolitan Life Ins. Co. v. Taylor,  481 U.S. 58 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); Cox v. Blue Cross and Blue Shield of Michigan, 869 F. Supp. 501, 503 (E.D. Mich. 1994).

Further, such claims "relate to" an employee benefit plan and, therefore, are preempted under ERISA's general preemption provisions, set forth in § 514(a).  29 U.S.C. § 1144(1); see e.g., Pilot Life Ins. Co. v. Dedeaux, supra; Nealy v. U.S. Healthcare HMO, 844 F. Supp. 966 (S.D.N.Y. 1994); Altieri v. Cigna Dental Health, Inc., 753 F. Supp. 61 (D. Conn. 1990).

ERISA's broad preemption provision is set forth in § 514(a), which states:

> Except as provided in subsection (b) of this Section, the provisions of this subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in § 1003(a) off this title and not exempt under § 1003(b) of this title . . .

29 U.S.C. § 1144(a) (emphasis added).  The phrase "relates to" has been interpreted as meaning that "it has a connection with or reference to such a plan."  Shaw v. Delta Airlines, Inc., 463 U.S. 85, 103 S. Ct. 2890 (1983) (emphasis added); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S. Ct. 1549 (1987).  Examining the purpose of § 514, the Supreme Court in Pilot Life observed that "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulations as exclusively a federal concern.'"  481 U.S. at 45-56, 107 S. Ct. at 1552 (citations omitted).

**B.    Plaintiff's Bad Faith Claim Is Not Saved From ERISA Preemption.**

Plaintiff relies upon a recent Eastern District decision as authority to argue that her bad faith claim is not preempted by ERISA.  This lone, and with due respect, mistaken decision stands apart

from every other District Court decision to address this issue, and is in conflict with existing Third
Circuit authority.  In <u>Rosenbaum v. Unum Life Insurance Co.</u>, 2002 WL 1769899 (E.D. Pa. July 29,
2002), the Honorable Clarence Newcomer held that bad faith claims were not preempted by ERISA,
because bad faith claims fell into ERISA's "savings" clause.  Historically, however, courts in this
district considered such claims preempted by ERISA.    <u>Campbell v. Prudential Insurance Co. of
America</u>, 2002 WL 462085, at *1 (E.D. Pa. March 25, 2002 (Ludwig, J.)( bad faith, declaratory
judgment and breach of contract claims preempted); <u>Cannon v. The Vanguard Group</u>, 1998 WL
512935 at *3 (E.D. Pa. 1998) (Reed, J.)(bad faith claims preempted, listing cases); <u>Rallis v.
Transworld Music Corp.</u>, 1994 WL 96264 at *2-*4 (E.D. Pa. 1994)(Buckwalter, J.)(declaratory
judgment, contract and bad faith claims preempted); <u>Murphy v. Metropolitan Life Ins. Co.</u>, 152 F.
Supp. 2d 755, 758 (E.D. Pa. 2001)(bad faith and consumer protection claims preempted); <u>Brooks v
Educators Mutual Life Ins. Co.</u>, 206 F.R.D. 96, 102 (E.D. Pa. 2002) (breach of contract and bad
faith claims preempted); <u>Miller v. Aetna Healthcare</u>, 2001 WL 1609681 at *5 (E.D. Pa. Dec. 12,
2001)(Waldman, J.)(unfair trade practices and bad faith claims preempted).  Judge Newcomer relied
on recent Supreme Court cases to argue that the law regarding ERISA's savings clause had
changed.  However, since <u>Rosenbaum</u>, four Judges of the Eastern District of Pennsylvania have
specifically disagreed with Judge Newcomer's opinion, and held that bad faith claims are preempted
by ERISA, regardless, and particularly in light of, recent United States Supreme Court decisions.

As an initial matter, in holding that Pennsylvania's Bad Faith statute "regulates insurance"
and is therefore saved from pre-emption <u>Rosenbaum</u> ignores Supreme Court precedent finding
that "bad faith" claims are preempted by ERISA because they would improperly create an
alternative enforcement mechanism for contesting the denial of ERISA benefits.  <u>Pilot Life Ins.
Co. v. Dedeaux</u>, 481 U.S. 41, 54, 57 (1987)(Congress' decision to make the remedial provisions

of Section 502(a) exclusive would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain alternative remedies under state law); <u>Rush Prudential HMO, Inc. v. Moran</u>, 122 S. Ct. 2151, 2166, 2167-68 (2002) ("we have recognized a limited exception from the saving clause for alternative causes of action and alternative remedies . . . ."); *id.* at 2174 (Thomas, J., dissenting) ("even a state law 'regulating insurance' will be pre-empted ***if it provides a separate vehicle to assert a claim for benefits*** outside of, or in addition to, ERISA's remedial scheme").

In <u>Sprecher v. Aetna U.S. Healthcare Inc.</u>, 2002 WL 1917711 (E.D. Pa. August 19, 2002), the Honorable Ronald L. Buckwalter held that the plaintiff's bad faith claims were preempted by ERISA. <u>Id</u>. at *3. Judge Buckwalter first outlined the method of analysis for determining whether a statute falls within the insurance exemption to ERISA's broad preemption clause.   First, the court must take a "common sense" view as to whether a law regulates insurance.  <u>Id</u>. at *4.  Next, the Court must examine the application of the McCarran-Ferguson factors.  <u>Id</u>.  A state statute need not meet all three factors in order to "regulate insurance" under the savings clause.  <u>Id</u>.  The factors are: whether the statue ahs the effect of transferring or spreading the policyholder's risk, whether the statue serves as an integral part of the policy relationship between the insurer and the insured, and whether the statute is aimed at a practice limited to entities within the insurance industry.  <u>Id</u>.

Judge Buckwalter found that Pennsylvania's bad faith statute did not alter the allocation of risk for which the parties initially contracted.  <u>Id</u>. at *4.  Because the risk of mishandling a claim is not the risk for which the parties initially contracted, this factor is not met.  <u>Id</u>.  Judge Buckwalter went on to find that the bad faith statute does not serve as an integral part of the policy relationship, because the statute did not add or make mandatory a new term of the contract.  Instead, the statute merely provides a remedy for an already existing obligation to act in good faith.  <u>Id</u>. at *5.

Judge Buckwalter found that the statute did meet the third factor, because it is aimed at a practice limited to the insurance industry. However, this was not enough to save the statute from preemption. Id.

More importantly, Judge Buckwalter found that the statute was not saved from preemption because it provided an "alternative remedy" which is categorically preempted by ERISA. Id. at *7 (citing Pilot Life Ins. Co. 481 U.S. 41). Congress intended ERISA to be the exclusive remedy for rights guaranteed under ERISA. Id. The Court stated: "even a state law 'regulating insurance' will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme or enlarges that claim beyond the benefits available in any action brought under §1132(a)." Id. Notably, Judge Newcomer in Rosenbaum failed even to address this important "exclusive remedy" issue, which, by itself, provides sufficient grounds to find ERISA preemption.

In Kirkhuff v. Lincoln Technical Institute Inc., 2002 WL 31015204 (E.D. Pa. September 6, 2002), the Honorable Harvey Bartle III specifically agreed with Judge Buckwalter that the bad faith statute was not saved from preemption because "the Pennsylvania bad faith statute provides a new cause of action and a new form of ultimate relief." Id. at *3. Judge Bartle similarly noted that the statute "conflicts with the carefully crated and exclusive remedies scheme of ERISA and is preempted." Id.

In Bell v. Unum Provident Corp., 2002 WL 3109972 (E.D. Pa. September 19, 2002), the Honorable Michael M. Baylson agreed with Judge Buckwalter's reasoning in Sprecher, and found that the two recent Supreme Court cases upon which Judge Newcomer relied, Unum Life Insurance Co. of America v. Ward, 526 U.S. 358 (1999) and Rush Prudential v. Moran, supra, did not even so

much as "whisper" at overruling <u>Pilot Life</u>, *supra*, where the Supreme Court held that state law bad

faith claims were preempted by ERISA.[3]

Thus, the one case that plaintiff could rely on to save her bad faith claim from preemption is

simply not good law, and should not be followed by this Court.  Because applying Pennsylvania's

bad faith statute to ERISA plans would improperly set up an alternative or additional form of relief

in violation of ERISA's purpose to provide exclusive remedies for violations of the guarantees of

ERISA and plans promulgated pursuant to ERISA, the bad faith statute is preempted by ERISA,

and Plaintiff's bad faith claim must be dismissed.

### C.     The Undisputed Facts Demonstrate No Bad Faith on the Part of Aetna.

Even if this claim were not preempted by ERISA, the undisputed facts demonstrate that

Plaintiff cannot show any bad faith on the part of Aetna.

Aetna collected substantial medical evidence, in the form of medical records, Functional

Capacity Evaluation Forms, Attending Physician Statements, independent reviews of medical

records, and no less than four IME's.  Aetna reviewed every piece of that evidence with the

assistance of a physician.  Aetna sought evidence from Plaintiff's own treating psychiatrist about

the types of treatment she was receiving for chronic fatigue syndrome.  Aetna accurately and

honestly informed her, in timely fashion, of the basis for its decision, with appropriate and

accurate reference to the relevant policy terms, and informed her of her right to appeal that

decision and to submit any information she felt would support her claim.  Aetna gave Plaintiff

every opportunity to present evidence in support of her claim, and even accommodated her often

demanding requests regarding the timing and location of IME's.  In the end, Aetna properly

applied the terms of the Plan to terminate Plaintiff's claim.

---

[3] This reasoning was also upheld in <u>Smith v. Continental Casualty Co.</u>, 02cv1915, slip opinion (Waldman, J.)(E.D. Pa. September 16, 2002)

## CONCLUSION

For all the foregoing reasons, Aetna respectfully requests this Court to grant its Motion for Summary Judgment, dismiss Plaintiff's claim with prejudice, and award Aetna its reasonable attorney's fees pursuant to ERISA.

Respectfully submitted,

OF COUNSEL:                         /s/ Patricia C. Collins
ELLIOTT REIHNER
SIEDZIKOWSKI & EGAN, PC             PATRICIA C. COLLINS
                                    Union Meeting Corporate Center V
                                    925 Harvest Drive
                                    Blue Bell, PA  19422
                                    977-1000

DATED: July 28, 2003

**<u>CERTIFICATE OF SERVICE</u>**

I, Patricia C. Collins, Esquire, hereby certify that on this date I served the foregoing upon

the following and in the manner indicated below:

**Via Overnight Mail**

Theodore A. Schwartz, Esquire
1620 Locust Street
Philadelphia, PA 19103-6392

/s/ Patricia C. Collins
Patricia C. Collins, Esquire

DATED:      July 28, 2003