IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELE RICCI | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | 02-CV-4330 |
| | : | |
| AETNA, INC. d/b/a AETNA U.S. HEALTHCARE and AETNA LIFE INSURANCE COMPANY | : | Electronically Filed |
| Defendants. | : | |

**STATEMENT OF UNDISPUTED FACTS OF DEFENDANT AETNA INC.,
d/b/a AETNA U.S HEALTHCARE AND AETNA LIFE INSURANCE COMPANY**

Defendant Aetna Inc., d/b/a Aetna U.S. Healthcare and Aetna Life Insurance Company ("Aetna"), by and through its undersigned attorneys and pursuant to this Court's June 12, 2003 Order, hereby submits this Statement of Undisputed Facts in support of its Motion for Summary Judgment. The following facts are undisputed and require summary judgment in Aetna's favor:

**I.     HISTORY OF THE CASE**

1.    Plaintiff Michelle Ricci became disabled from her position as a "Clinical Research Assistant" at Covance in July of 1995. AR23.[1]

2.    Aetna approved her claim for Long Term Disability benefits on May 14, 1996, after ordering an Independent Medical Examination ("IME"). AR 36.

3.    At the onset of her disability, Plaintiff claimed disability due to delayed sleep phase syndrome, depression and chronic fatigue syndrome. AR 46, 48.

---

[1] All references to the Administrative Record will appear in the following form: AR ##. The administrative record is filed with this Statement of Undisputed Facts and Aetna's Motion for Summary Judgment.

4. Plaintiff was under the care of a psychiatrist, Stephen L. Schwartz. AR 23.

5. Dr. Schwartz completed all Attending Physician Statements and Functional Capacity Evaluation Forms, requested by Aetna in order to continue to certify Plaintiff's disability, pertaining to Plaintiff. AR 308, 317, 323, 334, 336, 339, 354, 356, 378, 380.

6. Plaintiff did not receive regular treatment from any other physician besides her psychiatrist.

7. The IME performed in May 1996 confirmed her disability, but noted that her condition was "temporary." AR 311.

8. In May, 1998, Aetna requested another IME of Plaintiff to ascertain her status. AR 88.

9. The IME was performed on June 1, 1998 by Dr. James Bonner. Dr. Bonner concluded that Plaintiff was capable of full time unrestricted work activity, and that there was no evidence of any physical impairment. AR 319-321.

10. In October, 1998, Aetna forwarded a copy of Dr. Bonner's IME report to Dr. Schwartz, Plaintiff's psychiatrist. AR 98.

11. Because Dr. Schwartz disagreed with Dr. Bonner's conclusion that Plaintiff could return to work (AR 326), Aetna ordered another IME with an infectious disease specialist. AR 102. Dr. Kemler, Aetna's medical director, noted that the IME was necessary because there were two conflicting opinions regarding whether or not Plaintiff was disabled. AR 102.

12. In January of 1999, Dr. Russell J. Stumacher conducted an IME of Plaintiff. AR 329. Dr. Stumacher concluded that "at least by history," Plaintiff conformed to the standard CDC criteria for chronic fatigue syndrome. AR 331. He noted some uncertainty due to the fact that Plaintiff was pregnant at the time, and recommended reevaluation. AR 331.

13. Aetna then attempted to schedule another IME after the birth of Plaintiff's second child. AR 123.

14. Several IME appointments were canceled either because of conflicts, or because Plaintiff refused to attend IME's more than three to five miles from her home, or because she did not like the location of the IME. AR 137.

15. Accordingly, Aetna forwarded the file to Network Medical Review Company ("NMR") for an independent review by a psychologist and an internal medicine doctor. AR 142, 341 – 350.

16. Dr. Mark A Moyer, a board-certified Internal Medicine and Infectious Disease specialist, after reviewing all medical records from Dr. Schwartz and a report of a sleep study by Dr. James M. Youakim in June, 1995 (AR 296), three IME Reports, a letter from Plaintiff, and internal notes from Aetna (AR 341) determined that Plaintiff reported some of the symptoms of chronic fatigue syndrome, but that there was no objective evidence documenting impairments from the more telling symptoms of this syndrome -- neuro muscular deficits, lack of stamina, cognitive dysfunction, fogginess or difficulty with concentration. AR 343

17. Dr. Moyer also stated that she did not meet the "exclusion criteria" for diagnosis of chronic fatigue syndrome, as stated by the Centers for Disease Control. AR 343.

18. Further, Dr. Moyer noted that Dr. Schwartz's reported diagnosis of "undifferentiated somatoform disorder" specifically precludes a diagnosis of chronic fatigue syndrome. AR 343.

19. Dr. Robert G. Slack, a psychiatrist, reviewed the same records, and concluded that there was no psychiatric disorder which disabled Plaintiff from performing the essential functions of her job. AR 345.

20. He took note of the fact that Plaintiff became pregnant, delivered and was now raising two children during the term of her disability. Id. He stated: "It seems difficult to equate this ability with total inability to perform her job functions." Id.

21. He also stated that he spoke with Dr. Schwartz, who believed that Plaintiff was disabled due to her chronic fatigue syndrome and not due to her diagnosed somatoform disorder. AR 346.

22. On May 31, 2000, after reviewing the reports from NMR, and all of Plaintiff's medical records, Dr. Kemler determined that Plaintiff was capable of returning to work, and ordered a transferable skills analysis and labor market survey. AR 351, AR 148.

23. The labor market survey revealed five (5) positions within a fifty (50) mile radius of Plaintiff's home that would pay a reasonable wage. AR 151.

24. Before formally terminating Plaintiff's claim, Aetna asked for updated medical records to ascertain Plaintiff's status. AR 159.

25. Aetna also ordered a home interview of Plaintiff. AR 175.

26. Aetna also obtained another IME performed by an infectious disease specialist, Dr. Oksana M. Korzeniowski. Dr. Korzeniowski concluded that there was no objective data to support the diagnosis of chronic fatigue syndrome. AR 370.

27. Dr. Korzeniowski stated that certain blood tests should be performed to determine whether Plaintiff suffered from some other disorder that mimics chronic fatigue syndrome. Id. She noted that if these tests were normal, then there was no basis to conclude that Plaintiff was disabled. Id.

28. Aetna then wrote a letter to Dr. Schwartz, requesting the results of the basic blood tests indicated by Dr. Korzeniowski. AR 185, 218. Aetna specifically requested that Dr. Schwartz inform Aetna if another doctor would have these results. Id.

29. Dr. Schwartz responded: "I have not ordered any blood tests for Ms. Ricci, and have limited my care to the psychological / psychiatric sequelae of her condition." AR 218.

30. As of October 3, 2000, Plaintiff had not seen any physician but her psychiatrist, Dr. Schwartz, for her condition. AR 359. She stated that she only saw Dr. Schwartz every other month. Id.

31. Based on the IME reports, the NMR Reports, and the note from Dr. Schwartz, Aetna concluded that Plaintiff did not suffer from a physical condition. AR 186, 222. Instead, there was only support in the records for a psychiatric disorder. Id.

32. Because the Plan applicable to Plaintiff's claim for long term disability benefits only provided twenty-four (24) months of coverage for a mental/nervous condition, Plaintiff was no longer entitled to benefits under the terms of the Plan. AR 222.

33. Plaintiff submitted an appeal of this decision. AR 273.

34. In conjunction with her appeal, Plaintiff submitted a letter from her psychiatrist which stated that his care of her "had been directed to the sequelae of her chronic fatigue condition." He further stated "My treatment has been directed at those secondary symptoms [sadness and anxiety], as opposed to the basic disorder, her chronic fatigue, which is a complex condition representing an, as yet, inadequately explicated physical medical disorder." AR 275.

35. Accordingly, no physician was treating Plaintiff for Chronic Fatigue Syndrome.

36. Plaintiff submitted no other medical information with the appeal. She did not submit the basic blood tests that Aetna sought. She did not submit any evidence that she was under the treatment of any doctor for her "basic disorder" of chronic fatigue syndrome.

37. On December 19, 2001, Aetna determined to uphold the termination of Plaintiff's LTD benefits. AR 212.

38. Again, Aetna determined that Plaintiff was not under the care of a physician for a physical condition, but was only receiving psychiatric care. AR 214.

## II.    TERMS OF THE EMPLOYEE WELFARE BENEFIT PLAN

### A.    "Certified Period of Disability"

39. Under the terms of the applicable Managed Disability Plan ("the Plan"), benefits will be paid only during a Certified Period of Disability. Exhibit "A" at p. 3.[2]

40. Certification of a period of disability is defined by the Plan:

> You will be deemed to be disabled while either of the following applies to you:
>
> - During the period of a certified period of disability which ends right after the first 24 months benefits are payable:
>
>   You are not able solely because of disease or injury, to perform the material duties of your own occupation; except that if you start work at a reasonable occupation you will no longer be deemed disabled
>
> - Thereafter during such certified period of disability:
>
>   You are not able, solely because of disease or injury, to work at any reasonable occupation.

Exhibit "A" at p. 3.

41. The Plan states:

---

[2] Attached as Exhibit "A" is the version of the Managed Disability Plan applicable to Plaintiff's claim at the time her claim was terminated. The administrative record contains a Plan document applicable at the time Plaintiff became disabled.

> You will not be deemed to be under the care of a physician on any day more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the disability.

Exhibit "A" at p. 3.

42. The Plan further states:

> Certification of a period of disability will be denied if any one of the following apply:
>
> * * *
>
> - You are not under the care of a physician.

Id.

43. Under the terms of the Plan, the certified period of disability ends on "the date you cease to be under the care of a physician." Exhibit "A" at p. 6

44. The Plan states:

> Also, a certified period of disability will end after 24 monthly benefits are payable if Aetna determines that the disability is, at that time, caused to any extent by a mental condition (including conditions relating to alcoholism or drug abuse) described in the most current edition of the DSM.

Exhibit "A" at p. 7.

**B.     Administration of the Plan**

45. The Plan states that it is underwritten by Aetna, for purposes of monthly long term disability benefits after sixty months of a period of disability. Exhibit "A" at p. 2.

46. Aetna administers claims for benefits under the Plan. AR 414 . Aetna makes all determinations as to the certification of a period of disability. Exhibit "A" at p. 3; AR 414. Aetna makes all determinations on applications for benefits and appeals. AR 414; Exhibit "A" at 2, 3, 6, 11, 15.

7

    47.    The applicable Plan states the following:

> Aetna will have the right and opportunity to examine and evaluate any person who has requested certification of a period of disability at all reasonable times while that claim is pending or payable.

Exhibit "A" at p. 15 .

> If, in Aetna's judgment, you are able to participate, Aetna may, in its sole discretion require you to participate in An Approved Rehabilitation Program.

Exhibit "A" at p. 11.

> The start of a certified period of disability is determined by Aetna.

Exhibit "A" at p. 6.

> A period of disability will be certified by Aetna if, and for only as long as, Aetna determines that you are disabled.

Exhibit "A" at p. 3.

                                      Respectfully submitted,

| OF COUNSEL: | /s/ Patricia C. Collins |
|---|---|
| ELLIOTT REIHNER | |
| SIEDZIKOWSKI & EGAN, PC | PATRICIA C. COLLINS |
| | Union Meeting Corporate Center V |
| | 925 Harvest Drive |
| | Blue Bell, PA  19422 |
| | 977-1000 |

DATED: July 28, 2003

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this day a copy of the foregoing is being served upon the person(s) and in the manner set forth below:

**Via Overnight Mail**

Theodore A. Schwartz, Esquire
1620 Locust Street
Philadelphia, PA 19103-6392

_____
PATRICIA C. COLLINS

DATE:   July 28, 2003