## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| MICHELE RICCI, | : | CIVIL ACTION |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| AETNA, INC., D/B/A | : | |
| AETNA U.S. HEALTHCARE AND | : | |
| AETNA LIFE INSURANCE COMPANY, | : | NO. 02-CV-4330 |
| Defendants. | : | |
| | : | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
### MOTION FOR SUMMARY JUDGMENT

Plaintiff, Michele Ricci, by and through her attorneys, M. Mark Mendel, Ltd., respectfully submit the following Memorandum of Law in support of her Motion for Summary Judgment:

### I.     STATEMENT OF FACTS

Plaintiff incorporates herein by reference her Statement of Undisputed Facts (and all Exhibits) as if fully set forth herein at length. This Statement of Undisputed Fact is being filed contemporaneously with Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support.

### II.     LEGAL ARGUMENT

#### A.     SUMMARY JUDGMENT STANDARD GENERALLY

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions together with any affidavits, show that there is no genuine issue as to any material of fact and that the moving parties are entitled to a judgment as a matter of law. F.R.C.P. 56 (c). At the summary judgment stage, the Court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. Anderson v.

Liberty Lobby Inc., 477 U.S. 242, 249 (1986).  In making this determination, all of the facts must be viewed in a light most favorable to, and all reasonable inferences must be drawn in favor, of the non-moving party. Id., at 256.

The moving party has the burden of showing that there are no genuine issues of material fact. Cleotex Corp. v. Catrett, 477 U.S. 317, 323 )1986) ; Matthews v. Lancaster General Hospital, 87 F. 3d, 624, 639 (3d Cir. 1996).  In response, the non-moving party must put forth more than a scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in the pleadings.  Anderson, 477 U.S. at 249; Cleotex, 477 U.S. at 325; Williams v. Borough of West Chester, 891 F. 2d 458, 460 (3rd Cir. 1989). Rather, the non-moving party must show evidence on which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

1.    **The Plaintiff is entitled to summary judgment as a matter of law because defendant Aetna failed to file an answer to Plaintiff's Amended Complaint.**

Pursuant to F.R.C.P. 8 (d) the averments in a pleading to which a responsive pleading is required other than those as to the amount of damage, are admitted when not denied in a responsive pleading.

On September 13, 2002, the plaintiff filed her Amended Complaint.  At no time between September 13, 2002 up through the filing of this Motion did defendant Aetna, file an Answer to Plaintiff's Amended Complaint.  As a result, consistent with F.R.C.P. 8 (d), all of the averments of Plaintiff's Amended Complaint related to liability on the issues of ERISA violations and Bad Faith are deemed admitted by defendant Aetna.  Therefore, as a matter of law, plaintiff is entitled to summary judgment on all counts in its Amended Complaint in its favor and against defendant Aetna.

B.    **DENIAL OF BENEFITS VIOLATES ERISA (PLAINTIFF'S SECOND AND**

2

**THIRD CLAIMS FOR RELIEF)**

The insurance policy at issue is an employee benefit plan, thus, part of this case is governed by the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001, et seq. In <u>Firestone Tire and Rubber Co. v. Bruch</u>, the United States Supreme Court set forth the standard for reviewing a denial of benefits under an ERISA Plan. 489 U.S. 101 (1989).

When a Federal Court reviews whether an administrator wrongfully denied disability benefits to a claimant, and the disability plan grants the administrator or fiduciary discretionary authority to determine eligibility to benefits, or to construe terms of the plan, that review is limited as Federal Courts may only decide whether the denial was arbitrary or capricious. See <u>Firestone,</u> 489 U.S. 101, 115 (1989). "Under the arbitrary and capricious (abuse of discretion) standard of review, the District Court may overturn a decision of an administrator only if it is "without reason" unsupported by substantial evidence or erroneous as a matter of law." <u>Abnathya v. Hoffmann-La Roche, Inc.,</u> 2 F. 3d 40, 45 (3 rd Cir. 1993).

      1.   **Conflict of Interest; a heightened form of the Arbitrary and Capricious Standard.**

When an administrator or fiduciary operates a plan with a conflict of interest, the Courts must weigh the conflict as a factor determining whether there was an abuse of discretion. See <u>Firestone</u>, 489 U.S. at 115. Accordingly, in <u>Pinto v. Reliance Standard Life Insurance Co.</u>, the Third Circuit held that when an insurance company funds and administers a plan, it has a conflict of interest, and Courts must apply a heightened form of the arbitrary and capricious standard of review. See <u>Pinto v. Reliance Standard Life Insurance Co.</u>, 214 F. 3d 377, 387 (3rd. Cir. 2000). According to the Third Circuit, there is a strong incentive for an insurance company to deny benefits when "the fund

3

from which monies are paid is the same fund from which the insurance company reeps its profits."
Id. At 378.  A heightened arbitrary and capricious standard of review is a "range, not a point (that is) more penetrating the greater the suspicion of partiality, less penetrating the smaller of the suspicion."  Id. at 392-393 (citation, punctuation omitted).

Recently, two decisions in the Eastern District of Pennsylvania addressed this standard of review in cases that are similar to the present case.

In Cohen v. Standard Insurance Company, 155 F. Supp 2d 46 (2001), the plaintiff, an attorney, claimed that he was wrongfully denied benefits for partial disability pursuant to his employer's ERISA Disability Plan when he was diagnosed with coronary artery disease.  The defendant, Standard Insurance Company, both funded and administered the plan and denied the plaintiff's disability claim even though his treating physician, a board certified cardiologist, recommended that the plaintiff reduce his work hours as his condition was aggravated by work stress.  The Court noted that Standard's physicians were not experts in the field at issue and that Standard relied upon the opinion of non treating physicians over plaintiff's treating physicians.[1]  The Court also noted that looking at the defendant's final decision, the Court "sees a selectivity that appears self-serving".  Id. at 352 - 353.  The Honorable S. J. Newcomer concluded that this evidence:

---

[1]The "Treating Doctor Rule" applicable when the plaintiff asserts that a conflict of interest exists is distinguished from the "Treating Doctor Rule"discussed in the recent Supreme Court Opinion of Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965 (2003).  In Nord, the Court held that unlike disability determinations under the Social Security Program, it would not adopt a blanket application of the "Treating Physician Rule" to all disability determinations under plans covered by ERISA because unlike the Social Security Program, nothing in ERISA or the Secretary of Labor's ERISA regulations suggest that plan administrators must accord special deference to the opinions of treating physicians.  Nord, 123 S. Ct. at 1966.  In the present case, it is the plaintiff's position that the Nord opinion does not have an effect on the exercise of deference to the plaintiff's treating doctors when a conflict of interest is alleged to exist.

4

Warrants a heightened standard of review that does not afford
substantial deference to the administrator's decision. Accordingly,
the Court views the facts before the administrator with a high degree
of skepticism. Id. at 353.

In Dorsey v. Provident Life and Accident Insurance Company, 167 F. Supp. 2nd 846 (2001),

the plaintiff brought an action against defendant, Provident Life and Accident Insurance Company,

for denial of their claim for long term disability benefits pursuant to her employer's ERISA Plan.

The plaintiff had been diagnosed with fibromyalgia, a condition which caused her to suffer from

severe migranes and cervical strain and this diagnoses was supported by her treating physician, Dr.

David Chesner. Provident's medical reviewers concluded that there was not enough data to support

the diagnosis of fibromyalgia and not enough information to support plaintiff's claimed inability to

perform her job.

Defendant Provident, both funded and administered the disability plan. The Court noted that

there was a rarely "smoking gun" direct evidence of purposeful bias but found that procedural

anomalies and selective reliance upon the medical reports justified a heightened standard of reiew.

The Honorable S. J. Katz concluded:

Because these anomalies are evidence of a significant conflict of
interest, this Court places the arbitrary and capricious standard at the
far end of the sliding scale and accordingly will review Provident's
decision with a high degree of skepticism. Id. at 854.

In both Cohen, supra, and Dorsey, supra, the Courts of the Eastern District of Pennsylvania

found that the denial of disability benefits was, in fact, arbitrary and capricious under this heightened

standard of review.

In the present case, defendant Aetna, like the insurance companies in Cohen and Dorsey,

arguably in certain instances funds as well as administers the plaintiff's disability plan in addition

to having the authority to manage the claims administration portion of the plan. See Plaintiff's Statement of Undisputed Facts at paragraphs 10 , 11, 12 and 13. In addition, defendant Aetna failed to have the plaintiff evaluated by a physician who specialized in plaintiff's disorder which is admitted by defendant Aetna, as being the physical condition of Chronic Fatigue Syndrome. Defendant Aetna, selectively relied upon their reviewer's findings and rejected the opinion of plaintiff's treating physician, Dr. Schwartz, without adequate explanation. Defendant Aetna, rejected plaintiff's disability claim after paying her long term disability benefits from 1995 through 2001 for the disability caused by Chronic Fatigue Syndrome which defendant Aetna, admits. Defendant Aetna, rejected plaintiff's disability claim even though plaintiff's treating physician, Dr. Schwartz, confirmed the diagnosis of the physical condition known as Chronic Fatigue Syndrome in the plaintiff from 1995 up through August of 2001. Further, not one of defendant Aetna's seven (7) reviewing doctors (see Plaintiff's Statement of Undisputed Facts at  paragraph 21) concluded that the plaintiff was not disabled because she did not have Chronic Fatigue Syndrome nor did any of these same doctors conclude that the plaintiff was not disabled because she had a mental/nervous condition. Defendant Aetna, also rejected the recommendation of their own medical reviewer (Dr. Korznioski) to have additional tests performed to get a better understanding of plaintiff's claim and physical disability of Chronic Fatigue Syndrome. See Plaintiff's Statement of Undisputed Facts at paragraph 33.

These facts are indicative of a significant bias and conflict of interest which warrants the application of a high degree of skepticism to defendant Aetna's decision making process similar to that used by the Cohen and Dorsey Courts to making process. Therefore, even when the facts are judged in a light most favorable to the non-moving party, here, defendant Aetna, the plaintiff is

6

entitled to summary judgment because of defendant Aetna's arguable conflict of interest and selective use of its physicians and unreasonable decision making as illustrated above.

> **2.    The denial of plaintiff's disability claim and long term disability benefits was arbitrary and capricious.**

Alternatively, if this Court deems that no conflict of interest existed with respect to defendant Aetna's funding and administration of the long term disability plan as it relates to the plaintiff, the plaintiff asserts that defendant Aetna's denial of her long term disability benefit claim was nevertheless arbitrary and capricious.

Under the differential arbitrary and capricious standard, an administrator's decision will be upheld even if the Court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the language of the plan. Parente v. Aetna Life Ins. Co., 2001 U.S. Dist.10184, 5-6 (E.D. Pa. 2001). The arbitrary and capricious standard is essentially the same as the abuse of discretion standard. Id. at 6. The only determination left to the Court is whether or not the administrator's denial of benefits was reasonable. Id. The reasonableness of the administrator's decision "turns on its interpretation of the plane language in light of the facts that evidence in the administrative record." Id. at 7. Where the arbitrary and capricious standard is applied, the reviewing Court is giving limited scope and may overturn the administrator's decision only "if it is without reason, unsupported by the evidence or erroneous as a matter of law." Marks v. Meridian Bancorp, Inc., 2001 U.S. Dist. 8655, 12 (E.D. Pa. 2001).

In the present case, defendant Aetna's decision to terminate the plaintiff's long term disability benefits and subsequent upholding of the termination decision was without reason, unsupported by the evidence and erroneous as a matter of law. Michele Tedeschi, defendant, Aetna's disability

claim analyst, on June 28, 2001 issued a letter to the plaintiff indicating that her long term disability benefits as of July 1, 2001 would be terminated because (1) the plaintiff to remain eligible for benefits after the first twenty-four (24) months of benefits would need to be disabled based upon a physical condition; and (2) the plaintiff was being treated by Dr. Schwartz for a psychological/psychiatric condition and as a result the plaintiff was not being treated by a physician for a physical disability.  See Plaintiff's Statement of Undisputed Facts at paragraph 40.  A close examination of Exhibits "B" and "C", which are the long term disability plan documents provided by defendant Aetna fail to contain language that gives defendant Aetna, the ability to terminate the payment of long term disability benefits when the claimant is not being currently treated for her physical condition (Chronic Fatigue Syndrome) which is the cause of her disability, but is still under the care of a physician who is treating the mental sequelae of the physical condition.  Further, defendant Aetna admits that the plaintiff was disabled based upon the physical condition of Chronic Fatigue Syndrome from January of 1995 through July of 2001.  Defendant Aetna, paid long term disability benefits to the plaintiff throughout the period of January 1995 through July 1, 2001 based upon the physical disability of Chronic Fatigue Syndrome.  Not one of defendant Aetna's reviewing medical doctors concluded that the plaintiff did not have Chronic Fatigue Syndrome.  To the contrary, the majority of defendant's reviewing doctors indicated that the plaintiff did have Chronic Fatigue Syndrome.  And most importantly, Dr. Korznioski, who was on defendant's payroll, recommended that the plaintiff undergo some basic blood tests just prior to Michele Tedeschi terminating the plaintiff's long term disability benefits.  Defendant Aetna, through Michele Tedeschi, in between the time Dr. Korznioski made the recommendation for more blood testing to confirm the diagnosis of Chronic Fatigue Syndrome and the time when Michele Tedeschi terminated the

8

plaintiff's long term disability benefits, completely rejected the recommendation of Dr. Korznioski to have additional testing performed. Defendant Aetna chose to terminate plaintiff's long term disability benefits using the excuse that the plaintiff was not being treated by a physician for her physical disorder. Defendant Aetna made the assumption that if the plaintiff was not being treated by a physician for Chronic Fatigue Syndrome itself at the time just before termination, that she must not have Chronic Fatigue Syndrome and therefore, she has no physical disability and thus she is not disabled.

This conduct demonstrates that defendant Aetna's decision to terminate the plaintiff's long term disability benefits was completely without reason, unsupported by the record and clearly erroneous. Hence, defendant Aetna's decision to terminate the plaintiff's long term disability benefits was arbitrary and/or capricious.

Even defendant Aetna's reliance upon the contract/policy of long term disability benefits language further illustrates that defendant Aetna's conduct in terminating the plaintiff's benefits was without reason, unsupported by the evidence and erroneous. The group plan that the plaintiff was covered under for purposes of receiving long term disability benefits included language defining how a certified period of disability can end. Specifically at page 5 of the group plan (see Exhibit "B" attached to Plaintiff's Statement of Undisputed Facts) provides that:

> "...a certified period of disability will end after twenty-four (24) months if Aetna determines that the disability is, at any time caused to any extent by a mental condition (including conditions relating to alcoholism or drug abuse) described in the most current edition of the DSM."

An examination of the administrative record (see Exhibit "D" Volumes 1 and 2), the description of the group plan covering the plaintiff for long term disability benefits, the amendment

to that particular contract (see Exhibits "B" and "C"), and the depositions of Michele Tedeschi and Tammi Williams (see Exhibits "E" and "F") indicate that at no point in time did any physician ever conclude that the plaintiff's disability was caused to any extent by a mental condition. To the contrary, defendant Aetna, through its employees, Michele Tedeschi and Tammi Williams, at the time they terminated the plaintiff's benefits and upheld the termination decision, without reason, unsupported by the evidence and erroneously concluded that the plaintiff's disability was caused to some extent by a mental condition and as a result defendant Aetna, could terminate the plaintiff's long term disability benefits. See Plaintiff's Statement of Undisputed Facts at Paragraphs 40 through 47. Not one of defendant's reviewing medical doctors nor the plaintiff's treating physician, Dr. Schwartz, concluded that the plaintiff's disability was caused to any extent by a mental condition or a mental nervous disorder. The only individuals who made this conclusion were defendant Aetna's employees, Michele Tedeschi and Tammi Williams, a claims analyst and an appeals analyst.

Therefore, when viewing all of the facts and inferences from those facts in a light most favorable to defendant Aetna, there is no genuine issue as to any material fact regarding defendant, Aetna's conduct being arbitrary and/or capricious. To the contrary, it is clear that Aetna's conduct was unreasonable, unsupported and erroneous when Aetna decided to terminate the plaintiff's long term disability benefits and when Aetna decided to uphold that termination. Thus, the plaintiff is entitled to summary judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56 (c).

C.    **THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON HER FIRST CLAIM FOR RELIEF BECAUSE DEFENDANT AETNA VIOLATED PENNSYLVANIA'S INSURANCE BAD FAITH STATUTE, 42 PA. C.S.A. § 8371, WHEN IT TERMINATED (DENIED) THE PLAINTIFF'S LONG TERM DISABILITY BENEFITS**

1.    **Pennsylvania's Bad Faith Statute is saved from ERISA preemption**.

10

This Court previously ruled after considering defendant Aetna's Motion to Dismiss pursuant to F. R. C. P. 12 (b) (6) on the issue of the application of Bad Faith in this case and the plaintiff's response thereto that "until the Third Circuit resolves this issue, this Court will not dismiss the plaintiff's Bad Faith Claim at this stage of the proceedings." See the Honorable Timothy J. Savage's March 12, 2003 Order.  Therefore, there is no need to revisit the issue of preemption at this point.

**2.     Defendant, Aetna's decision to terminate the plaintiff's long term disability benefits was done in Bad Faith.**

42 Pa. C.S.A. § 8371 "Actions on Insurance Polices" provides:

> In an action arising under an insurance policy, if the Court finds that the insurer has acted in Bad Faith toward the insured, the Court may take all of the following actions:
> (1)   Award interest on the amount of the claim from the date that the claim was made by the insured in an amount equal to the prime rate of interest plus three (3%) percent;
> (2)  Award punitive damages against the insurer; and
> (3)  Assess court costs and attorneys fees against the insurer.

The standard for assessing the insurer for Bad Faith under § 8371 was recently restated in Keefev Prudential Property and Casualty Insurance Co., 203 F. 3d 218, 225 (3d Cir. 2000):

> "The terms bad faith includes any frivolous or unfounded refusal to pay proceeds of a policy.  For purposes of an action against an insurer for failure to pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing) through some motive  of self interest or ill will; mere negligence or bad judgment is not Bad Faith.  Therefore, in order to recover under a Bad Faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim."

These two (2) elements, (1) absence of a reasonable basis for denying a claim under the policy and (2) knowledge or reckless disregard of the lack of such reasonable basis, must be proven

by clear and convincing evidence.  Klinger v. State Farm Mutual Auto Insurance Co., 115 F. 3d 230,

233 3d Cir. (1997).  Because "the determination of whether a given factual dispute requires

submission to a jury must be guided by the substantive evidentiary standards that apply to the case,"

Anderson 477 U.S. at 254, 255 106 S.Ct. 2505, a proponent of a Bad Faith claim must present

sufficient evidence such that a jury could find bad faith under the clear and convincing standard."

Greco v. DePaul Riviere Life Insurance Co., No. Civ. A. 97-6317 (1999 W L 95717, 3, (E.D.Pa.,

February 12, 1999).  Therefore, the threshold question becomes whether there exists a reasonable

basis for denying benefits under the policy. Keefev, 203 F. 3d at 225 (emphasis added).

Canvassing the law of Bad Faith under 42 Pa. C.S.A. Section 8371 in the context of disability

insurance claims, Judge Kelly recently wrote:

> Court repeatedly upheld that an insurance company substantial,
> thorough investigation, based upon which the insurance company
> refuses to make will continue benefit payments, establishes a
> reasonable basis that defeats a Bad Faith claim.  See E.G. Seidman v.
> Minnesota Life Insurance Co., No. 96-CV-3191, 1997 WL 597608 at
> 3 (E.D.Pa. Sept. 11, 1997) (Finding even where some testing may
> have been inadequate, and physicians disagree whether the plaintiff
> was still disabled, the insurance company had a reasonable basis to
> terminate disability benefits); Parasco v. Pacific Indemnity Co., 920
> F. Supp. 647, 655-56 (E.D. Pa. 1996) (Finding a thorough
> investigation provided a reasonable basis); Montgomery v. Federal
> Insurance Co., A. 36 F. Supp. 292, 298 (E.D. Pa. 1993) (Finding an
> insurance company's extensive investigation was sufficient to
> establish a reasonable basis).  What these cases show is that for an
> insurance company to show that it had a reasonable basis, an
> insurance company is not required to demonstrate its investigation in
> order to correct conclusion or even that its conclusion more likely
> than not was accurate.  The insurance company also is not required to
> show the process by which it reached its conclusion was flawless or
> that the investigatory methods it employed eliminated possibilities at
> odds with its conclusion.  Rather, an insurance company simply must
> show it conducted a review on investigation sufficiently thorough to
> yield a reasonable foundation for its action. Cantor v. The Equitable

Life Assurance Society, No. 97-CV-5711 (1999 WL 21 9786 (E.D. Pa.. April 12, 1999).

In the present case, the evidence set forth in Plaintiff's Statement of Undisputed Facts, and Exhibits attached thereto show that prior to defendant Aetna terminating plaintiff's long term disability benefits, defendant Aetna simply did not conduct a review or investigation sufficient or thorough enough to provide a reasonable foundation for its action to terminate the plaintiff's benefits. In support of this, the plaintiff incorporates herein by reference the arguments and facts set forth in Section B of this Memorandum of Law.

The plaintiff does not dispute the fact that defendant Aetna conducted a review or investigation of the plaintiffs chronic fatigue disability status. However, the plaintiff asserts that the defendant Aetna's investigation was not sufficiently thorough to yield a reasonable foundation for its decision to terminate plaintiff's long term disability benefits in July of 2001. One only needs to look to the history behind defendant Aetna's investigation into the plaintiff's disability. Specifically, defendant Aetna used the following medical doctors to evaluate the claimant's condition either upon an actual physical examination of the plaintiff or through a review of the records that defendant Aetna provided to the individual doctor: Leeander T. Ellis, M.D.; James F. Bonner, M.D.; R. Leonard Kemler, M.D.; Russell J. Stumacher, M.D.; Mark A. Moyer, M.D.; Robert G. Slack, M.D.; Oksana N. Korznioski, M.D. See Plaintiff's Statement of Undisputed Facts at Paragraph 24. With the exception of Dr. Kemler who concluded that it was not clear whether or not the plaintiff had Chronic Fatigue Syndrome and that further testing and the investigation was recommended, most of defendant's reviewing medical doctors related plaintiff's disability back to the physical condition of Chronic Fatigue Syndrome. This, of course, was in addition to plaintiff's own treating physician,

13

Dr. Schwartz' opinion regarding the physical condition of Chronic Fatigue Syndrome being the cause of her disability.  At best, defendant Aetna's termination of the plaintiff's long term disability benefits in July of 2001 clearly lacked any reasonable basis given the fact that just before the termination, Dr. Schwartz indicated to defendant Aetna that he was limiting his care of the plaintiff to the physical and psychological sequelae of her physical condition of Chronic Fatigue Syndrome. Subsequent to Dr. Schwartz's explanation to Michele Tedeschi, Michele Tedeschi terminated the plaintiff's long term disability benefits indicating that the plaintiff was not disabled based upon a physical condition, since she was being treated by Dr. Schwartz for a psychological/psychiatric condition.  See Plaintiff's Statement of Undisputed Facts at Paragraphs 40 and 45.  The unreasonableness of defendant Aetna's denial of plaintiff's long term disability benefits becomes even more clear because (1) the administrative record fails to contain any medical opinion, diagnosis or conclusion that the plaintiff's disability was caused to any extent by a mental/nervous disorder; (2) defendant Aetna by and through its employees, Michele Tedeschi and Tammi Williams admit that plaintiff was disabled based upon the physical condition of Chronic Fatigue Syndrome; and (3) Michele Tedeschi and Tammi Williams admit that they do not know the meaning of the word "sequelae". Defendant Aetna based upon these facts, as well as all of the facts set forth in Plaintiff's Statement of Undisputed Facts, establishes that it had no reasonable basis for denying the plaintiff's long term disability benefits.  Defendant Aetna knew or recklessly disregarded the fact that it lacked a reasonable basis when denying plaintiff's long term disability benefits.

Therefore, after reviewing the facts and all reasonable inferences drawn therefrom in favor of defendant Aetna, the plaintiff is entitled to summary judgment as a matter of law in her favor regarding her Bad Faith claim against defendant Aetna.

### III.    <u>CONCLUSION</u>

For all of the above reasons, it is respectfully requested that plaintiff's Motion for Summary

Judgment directed to defendant Aetna, be granted in whole.

**RESPECTFULLY SUBMITTED:**

**M. MARK MENDEL, LTD.**


**BY:**    _____
        **THEODORE A. SCHWARTZ, ESQUIRE**
        **ATTORNEY I.D. NO. 09256**
        **KENNETH B. GREAR, ESQUIRE**
        **ATTORNEY I.D. NO. 81608**
        **ATTORNEYS FOR PLAINTIFF**
        **1620 LOCUST STREET**
        **PHILADELPHIA, PA 19103-6392**
        **TELEPHONE NO. (215) 732-7200**
        **FAX NO. (215) 546-3277**


**DATE:** _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **MICHELE RICCI,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **VS.** | : | |
| | : | |
| **AETNA, INC., D/B/A** | : | |
| **AETNA U.S. HEALTHCARE AND** | : | |
| **AETNA LIFE INSURANCE COMPANY,** | : | **NO.  02-CV-4330** |
| **Defendants.** | : | |
| | : | |

## ORDER

    **AND NOW**, this      day of          , 2003, upon consideration of

Plaintiff, Michele Ricci's Motion for Summary Judgment and defendant, Aetna, Inc., d/b/a Aetna

U.S. Healthcare and Aetna Life Insurance Company's response thereto, it is hereby **ORDERED** and

**DECREED** that Plaintiff's Motion for Summary Judgment is granted.

                                       **BY THE COURT:**

 

                                 _____

                                         **J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| **MICHELE RICCI,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **VS.** | : | |
| | : | |
| **AETNA, INC., D/B/A** | : | |
| **AETNA U.S. HEALTHCARE AND** | : | |
| **AETNA LIFE INSURANCE COMPANY,** | : | **NO.  02-CV-4330** |
| **Defendants.** | : | |
| | : | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DIRECTED TO
DEFENDANT, AETNA, INC., D/B/A AETNA U.S. HEALTHCARE AND
AETNA LIFE INSURANCE COMPANY (HEREINAFTER REFERRED
TO AS DEFENDANT "AETNA")**

_____For the reasons set forth in the accompanying Memorandum of Law in Support of Plaintiff's

Motion for Summary Judgment, it is respectfully requested that this Court enter the attached Order

granting Plaintiff's Motion for Summary Judgment. Plaintiff incorporates herein by reference as if

fully set forth herein at length Plaintiff's Statement of Undisputed Facts (and all Exhibits) which is

being filed contemporaneously with Plaintiff's Summary Judgment Motion and Memorandum of

Law in Support.

**RESPECTFULLY SUBMITTED:**

**M. MARK MENDEL, LTD.**

**BY:**  _____
          **THEODORE A. SCHWARTZ, ESQUIRE**
          **KENNETH B. GREAR, ESQUIRE**
          **1620 Locust Street**
          **Philadelphia, PA 19103-6392**
          **Attorneys for Plaintiff, Michele Ricci**

**DATE:** _____

g:\tas\ricci\MSJ.wpd

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **MICHELE RICCI,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **VS.** | : | |
| | : | |
| **AETNA, INC., D/B/A** | : | |
| **AETNA U.S. HEALTHCARE AND** | : | |
| **AETNA LIFE INSURANCE COMPANY,** | : | **NO.  02-CV-4330** |
| **Defendants.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Plaintiff's Statement of Undisputed Facts,

Motion for Summary Judgment and Memorandum of Law in Support of Plaintiff's Motion for

Summary Judgment was filed with the Court and forwarded to the below referenced counsel via First

Class United States Mail, Postage Prepaid on July 28, 2003:

> Patricia C. Collins, Esquire
> Elliott, Reihner, Siedzikowski & Egan, P.C.
> Union Meeting Corporate Center V
> P.O. Box 3010
> 925 Harvest Drive
> Blue Bell, PA 19422

**M. MARK MENDEL, LTD.**

**BY:** _____
    **THEODORE A. SCHWARTZ, ESQUIRE**
    **ATTORNEY I.D. NO. 09256**
    **KENNETH B. GREAR, ESQUIRE**
    **ATTORNEY I.D. NO. 81608**
    **ATTORNEYS FOR PLAINTIFF**
    **1620 LOCUST STREET**
    **PHILADELPHIA, PA 19103-6392**
    **TELEPHONE NO. (215) 732-7200**
    **FAX NO. (215) 546-3277**

**DATE:** _____