IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MICHELE RICCI** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | |
| v. : | 02-CV-4330 |
| : | |
| **AETNA, INC. d/b/a AETNA U.S.** : | |
| **HEALTHCARE and AETNA LIFE** : | |
| **INSURANCE COMPANY** : | |
| : | **Electronically Filed** |
| **Defendants.** : | |

**ORDER**

AND NOW, this ____ day of _____, 2002, upon consideration of Plaintiff's Motion for Summary Judgment, and the response of Aetna, Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life Insurance Company thereto, it is hereby **ORDERED** that said Motion is **DENIED**. Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**, and judgment is hereby entered in favor of Defendants.

BY THE COURT:

_____
Savage, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELE RICCI | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | 02-CV-4330 |
| | : | |
| AETNA, INC. d/b/a AETNA U.S. HEALTHCARE and AETNA LIFE INSURANCE COMPANY | : | Electronically Filed |
| | : | |
| Defendants. | : | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT AETNA INC. d/b/a/
<u>AETNA U.S. HEALTHCARE AND AETNA LIFE INSURANCE COMPANY</u>**

Defendants, Aetna Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life Insurance Company ("Aetna"), by and through its undersigned attorneys, hereby files this Response in Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff admits that she was not under the care of a physician for "Chronic Fatigue Syndrome itself" (Plaintiff's Memorandum of Law at p. 9), and therefore Plaintiff was not disabled under the terms of the Plan. Accordingly, this Court must deny Plaintiff's Motion for Summary Judgment and enter judgment in favor of Aetna. Aetna incorporates by reference herein its Motion for Summary Judgment, Statement of Undisputed Facts and Response to Plaintiff's Statement of Undisputed Facts.

### THE APPROPRIATE STANDARD OF REVIEW

Plaintiff argues that she is entitled to summary judgment because Aetna operated under a conflict of interest. Plaintiff misstates the law and the facts.

The existence of a conflict of interest does not entitle Plaintiff to summary judgment, but only requires the Court to apply a more heightened standard of review, depending upon the degree of the conflict. Pinto v. Reliance Standard Life Insurance Company, 214 F.3d 377, 393 (3d Cir. 2000). Aetna acknowledges that, under Pinto, it acted as both funder and claims administrator for the Plan. However, there is no other evidence of any conflict of interest that would require anything more than a highly deferential standard of review.

Plaintiff relies upon Dorsey v. Provident Life and Accident Insurance Co., 167 F. Supp. 2d 846 (2001) and Cohen v. Standard Insurance Co., 155 F. Supp. 2d 46 (2001), to support her argument that a more heightened degree of scrutiny applies. However, both cases presented procedural and substantive anomalies that are not present in this case.

In Dorsey, the Court based its conclusion that a more heightened degree of scrutiny applied on the following unusual set of facts: the defendant reversed its initial decision to provide benefits, ignored internal recommendations to reinstate benefits, selectively relied upon a doctor's description of plaintiff's limitations, allowed the same doctor who reviewed the initial claim to review his own work on appeal, and did not allow the appeals analyst to function properly as an independent review analyst who could reverse the decision, but instead required him to confront the initial decision makers. Dorsey, 166 F. Supp. 2d at 853-54.

In Cohen, the Court based its conclusion that a more heightened degree of scrutiny applied to an equally aberrant set of facts: the defendant ignored credible contradictory evidence, relied upon the opinion of non treating physicians over treating physicians,[1] and selectively relied upon only certain medical records. Cohen, 155 F. Supp. 2d at 353.

---

[1] At the time of the Cohen decision, case law allowed a reviewing court to require a claim administrator to give more weight to the opinion of a treating physician than to that of a non-treating reviewing physician. Defendant's failure to do so in Cohen thus was a departure from the expected norm. In Black & Decker v. Nord, 123 S.Ct. 1965, 1967 (2003), the United States Supreme Court held that an ERISA claims administrator is not required to accord any

2

None of these defects appears in Aetna's handling of Plaintiff's claim. Aetna's claims and appeals procedures work independently of each other, so that the appeals analyst can review the evidence independently and make a determination. Aetna reviewed every single piece of medical evidence that came in, but in the end relied on the statements of Plaintiff's own physician and Plaintiff herself to deny the claim. There is no evidence that, for example, Aetna relied upon only selected portions of medical reports and ignored other parts of those reports. On the contrary, with each IME that was performed, Aetna reviewed the conclusions of the IME with a physician, and followed up with the recommendations of the IME physician and its own physician. More importantly, there is no evidence anywhere in the record to contradict the fact that Plaintiff did not see a doctor for "Chronic Fatigue Syndrome itself" (in Plaintiff's own words, see Plaintiff's Motion for Summary Judgment at p. 9) during her entire certified period of disability.

The record thus reflects that there are no procedural or substantive anomalies at all that would indicate that any purported conflict of interest "played a role" in Aetna's decision to terminate Plaintiff's benefits because she clearly failed to comply with a requirement of the Plan in that she was not under the care of a physician for a physical condition. Cohen, 155 F. Supp. 2d at 353.

Instead, this case is more like Sapovits v. Fortis Benefits Insurance Inc., 2002 WL 31923047, at *15-16 (E.D. Pa. February 11, 2002)(Baylson, J.). In Sapovits, the Court noted that there were no procedural irregularities to support a more heightened degree of scrutiny,

---

special deference to the opinions of treating physicians. Plaintiff argues that the holding of Nord does not apply to this Court's determination of the appropriate standard of review. Plaintiff is wrong. The issue squarely presented to the Supreme Court in Nord was whether the "treating physician rule" set out in regulations concerning Social Security disability determinations applied to disability determinations under ERISA Plans. Id. If the law does not require even an allegedly conflicted administrator to accord deference to the opinions of treating physicians, the weight given by the administrator to the treating physician's opinion therefore cannot be considered as a factor in determining whether the conflict played a role in the disability determination.

3

regardless of the defendant's decision to rely upon the opinions of physicians who had reviewed the plaintiff's written medical records and reports, but had not examined plaintiff. The Court specifically distinguished Cohen, noting that none of the procedural irregularities present in Cohen were evident.

Similarly, here there is no evidence of any procedural or substantive irregularities. Instead, Plaintiff relies on misleading statements of the facts of record. For example, Plaintiff argues that Aetna failed to have her evaluated by a physician who specialized in CFS. This argument is absurd for several reasons. First, Plaintiff did not even seek treatment from a physician who specializes in CFS or in infectious disease. If Plaintiff herself did not seek treatment from such a specialist, she can hardly complain that Aetna did not recognize that her claim required evaluation by one. Second, Aetna had no less than three infectious disease specialists, a physiatrist, and two psychiatrists either examine Plaintiff or review Plaintiff's records. AR 311, 319, 329, 341, 368. Generally, individuals diagnosed with CFS are treated by infectious disease specialists.

Plaintiff also claims that Aetna selectively relied upon the findings of the doctors who performed IME's and records reviews, and that it rejected the opinion of Dr. Schwartz, Plaintiff's treating physician. Plaintiff's argument misses the point. Plaintiff admits that she was not being treated by a physician for "Chronic Fatigue Syndrome itself" (Plaintiff's Motion for Summary Judgment at p. 9). Accordingly, this case turns on whether Plaintiff was being treated by a physician for her disabling condition, Chronic Fatigue Syndrome. Aetna relied upon the report of Dr. Korzeniowski and a letter from Dr. Schwartz in terminating Plaintiff's claim. Dr. Korzeniowski asked to see the results of certain blood tests to exclude other syndromes that mimic CFS, and Dr. Schwartz stated that he had not done those blood tests because he was not

4

treating Plaintiff for CFS. Aetna therefore was fully entitled to terminate plaintiff's benefits based on the fact that she was not receiving treatment from a physician for her (allegedly) disabling condition. Moreover, Aetna reviewed and relied upon each medical report it received and followed the recommendations of those reports. In fact, Aetna even forwarded IME reports to Plaintiff's physician for comment and relied upon his comments in determining whether to continue disability. AR 326.

Plaintiff seems to believe that the fact that Aetna paid disability benefits to Plaintiff from July of 1995 until August of 2001 somehow indicates a conflict of interest.[2] To the contrary, this indicates that Aetna followed its procedures and those mandated by ERISA to carefully and thoroughly review all of the evidence in support of Plaintiff's claim. The fact that Plaintiff received benefits for that long proves only that Aetna was not precipitous in its decision to terminate benefits and does not change the fact that both Plaintiff and her psychiatrist informed Aetna that Dr. Schwartz was treating only her psychological or psychiatric symptoms (regardless of their origin), and that she was not receiving any treatment for the allegedly disabling condition of CFS.

Finally, Plaintiff states that Aetna "ignored" the recommendation of Dr. Korzeniowski that Plaintiff should have basic blood tests performed. Again, the argument is absurd. Aetna requested this information from Plaintiff's identified physician, because these are standard tests performed in diagnosing CFS, and excluding other conditions; Aetna was therefore entitled to consider the fact that these tests had not been performed as indicative of any or all of the following: that she was not being treated for CFS, or that she did not have CFS, or that the ailment she did have was not of sufficient severity to disable her. Dr. Schwartz confirmed at least one of these conclusions, stating that he did not perform the tests because he was not

---

[2] One wonders what Plaintiff would have argued if Aetna had not made payments during that period.

providing treatment for "Chronic Fatigue Syndrome itself." Besides the fact that it was Plaintiff's burden to provide this basic evidence of her disability, and besides the fact that Aetna is not Plaintiff's physician, and cannot require her to undergo those blood tests, the results of these tests are now irrelevant. Plaintiff was not under the care of a physician for a physical condition, and therefore she is not eligible for benefits under the terms of the Plan.

Accordingly, Aetna's termination of Plaintiff's disability is entitled to great deference, despite the fact that Aetna administered and funded the Plan. There is no evidence that any conflict of interest played any role in its decision to terminate benefits. Instead, the evidence shows that Aetna followed its own procedures and those mandated by ERISA, and carefully and thoroughly reviewed all of the medical evidence in support of Plaintiff's claim.

## AETNA PROPERLY TERMINATED PLAINTIFF'S BENEFITS

Under any standard of review, Plaintiff's own motion illustrates that Aetna properly terminated Plaintiff's benefits. The above discussion of Plaintiff's arguments regarding the appropriate standard of review illustrates the lengths to which Aetna went to provide a full and fair review of Plaintiff's claim. Aetna's determination was consistent with the language of the Plan and the evidence before Aetna.

A few provisions of the Plan bear repeating here. The Plan states:

> You will not be deemed to be **under the care of a physician** on any day more than 31 days before the date he or she has seen and treated you in person **for the disease or injury that caused the disability**.

Exhibit "A" to Aetna's Statement of Undisputed Facts at p. 3 (emphasis added). The Plan further states:

> Certification of a period of disability will be denied if any one of the following apply:

6

                                   \* \* \*

- You are not under the care of a physician.

Id. Under the terms of the Plan, the certified period of disability ends on "the date you cease to be under the care of a physician." Id. at p. 6.[3]

Plaintiff was not, during her entire certified period of disability, under the care of a physician for CFS.[4] Yet Plaintiff affirmatively claims that she was disabled **due to** CFS. Plaintiff's Statement of Undisputed Facts at ¶ 21. Plaintiff nonetheless admits, as she must, that she was not under the care of a physician for "Chronic Fatigue Syndrome itself." Plaintiff's Motion for Summary Judgment at p. 9. Plaintiff's psychiatrist stated on two occasions that he was not treating her for CFS, but rather for the "psychological / psychiatric sequelae" or the "sadness and anxiety" resulting from her CFS.

Thus, there is no dispute of material fact that Plaintiff was not under the care of a physician for the condition that caused her disability (CFS) at any time from July of 1995 to August of 2001. Aetna properly terminated Plaintiff's certified period of disability, and Aetna is entitled to judgment as a matter of law. It also bears repeating here that treatment for the sadness and anxiety associated with a physical condition is not treatment for that physical condition.

---

[3] Plaintiff argues that the plan documents "fail to contain language that gives defendant Aetna, the ability to terminate the payment of long term disability benefits when the claimant is not being currently treated for her physical condition (Chronic Fatigue Syndrome) which is the cause of her disability, but is still under the care of a physician who is treating the mental sequeale of the physical condition." The language cited herein demonstrates the infirmity of this argument. Every single version of the Plan at issue in this case contains the quoted language.

[4] There is no dispute of material fact that this is the basis of Aetna's decision. Aetna's initial termination letter stated: "Since you are being treated by Dr. Schwartz for a psychological / psychiatric condition, and you are not being treated by a physician for a physical disability, your Long Term Disability benefits will terminate." AR 222. Aetna's appeal letter, upholding the termination, stated: "Additional information in Ms. Ricci's file indicates her treating physician is Dr. Schwartz. Information received from Dr. Schwartz reports he is treating her only for a psychological / psychiatric condition. Therefore, Ms. Ricci is not under the care of a physician with regards to her physical impairment. In view of the above, we are maintaining our termination decision based on contractual limitations." AR 214.

Plaintiff states in her Motion: "Defendant Aetna made the assumption that if the plaintiff was not being treated by a physician for Chronic Fatigue Syndrome itself at the time just before termination, that she must not have Chronic Fatigue Syndrome and therefore, she has no physical disability and thus she is not disabled." Plaintiff's tortured attempt to mislead this Court as to the language of the Plan and the reason for the termination of benefits must fail.

First, to reiterate, Plaintiff has admitted that she was not under the care of a physician for "Chronic Fatigue Syndrome itself." This admission alone justifies Aetna's termination of her benefits under the terms of the Plan. Second, Aetna did not conclude that Plaintiff did not have CFS, or that she did not have a physical disability. Instead, Aetna applied the language of the Plan that requires Plaintiff to be under the care of a physician for the condition that caused the disability in order to certify a period of disability. Plaintiff admitted that she was not under the care of a physician for CFS, so Aetna could not certify her disability.

Plaintiff makes these tortured arguments in order to mislead the Court as to the evidence it should consider in reviewing Aetna's actions. Plaintiff is attempting to make relevant the mountains of medical evidence that Aetna reviewed, when the only real issue here is the language of the Plan and the type of treatment Plaintiff was receiving. Thus Plaintiff's arguments regarding the medical evidence are incorrect and misleading. For example, Plaintiff argues that none of the doctors who examined Plaintiff or reviewed her medical records determined that she did not have CFS. This is simply untrue. AR 368, 341. Dr. Moyer concluded that Plaintiff showed no objective evidence of the symptoms of CFS, and that she did not meet the exclusion criteria for CFS. AR 341-343. Dr. Korzeniowski concluded that there was no objective data to support the diagnosis of chronic fatigue syndrome. AR 368-370. Plaintiff also argues that Dr. Korzeniowski was on Aetna's "payroll." This is also untrue. Dr.

8

Korzeniowski was hired by an independent third party to examine Plaintiff and review records. She is not and was not an Aetna employee. Finally, Aetna did not reject Dr. Korzeniowsi's recommendations regarding blood tests. As set forth above, Plaintiff and her psychiatrist chose to ignore Aetna's request rather than provide the requested information. Imagine Plaintiff's indignation if Aetna had required her to undergo blood testing that her own physician had not recommended. Certainly, if Aetna had required Plaintiff to undergo blood tests, Aetna would now be defending itself against accusations of interfering with her treatment and the unauthorized practice of medicine.

Plaintiff also misunderstands Aetna's position regarding her mental condition. Aetna's denial letter includes a statement that Plaintiff exhausted her benefits for a mental condition. Once Aetna concluded that Plaintiff was not under the care of a physician for CFS, it had to examine the records for other evidence of disability. There is some reference in the records to depression and somatoform disorder. However, Aetna concluded that Plaintiff's benefits with regard to these conditions were exhausted even if she were disabled due to a mental condition. This demonstrates Aetna's adherence to procedure and careful review of the records, and that Aetna did not act arbitrarily or capriciously in terminating Plaintiff's benefits.[5]

Because Aetna properly applied the terms of the Plan to Plaintiff's claim, and because Plaintiff admits that she was not under the care of a physician for CFS, the condition that caused her disability, Aetna is entitled to judgment in its favor as a matter of law.

---

[5] In fact, in light of Plaintiff's admission that she was not disabled due to a mental condition, Aetna did more than it was required to do in terminating Plaintiff's claim. Aetna could have simply terminated based on the fact that Plaintiff was not under the care of a physician, and never referenced her right to benefits for a mental condition.

9

**PLAINTIFF CANNOT STATE A BAD FAITH CLAIM AGAINST AETNA**

I.     **ERISA PREEMPTION**

Plaintiff argues that this Court need not revisit the issue of ERISA preemption because this Court previously ruled on the issue. However, the Court has made no ruling on whether ERISA preempts Plaintiff's bad faith claim, and in fact specifically declined to do so in the Order denying Aetna's Motion to Dismiss. Further, case law since that decision, and the Court's decision denying Aetna's Motion for Permission to Appeal, requires that this Court find that ERISA preempts Plaintiff's bad faith claims.

First, the United States Supreme Court recently created a new test for determining whether a law "regulates insurance" so as to be saved from ERISA preemption. In Kentucky Association of Health Plans, Inc. v. Miller, ___ U.S. ___, 123 S. Ct. 1471, 1479 (2003) the Court described the test: first, the law must be specifically directed to entities engaged in insurance; second, the law itself must substantially affect the risk pooling arrangement between insurer and insured. Cases in this district applying this new test have stated that even if the bad faith statute meets these criteria, it is still preempted if it conflicts with ERISA's exclusive remedial scheme by providing an alternative remedy. McGuigan v. Reliance Standard Life Insurance Co., 256 F. Supp. 2d 345, 347 (E.D. Pa. 2003).

The McGuigan Court found that Pennsylvania's bad faith statute regulates insurance, but that it did not substantially affect the risk pooling arrangement between insurer and insured. The Court relied upon the United States Supreme Court's decision in Pilot Life that a Missouri bad faith statute that imposed a penalty upon insurers for its conduct towards insureds did not have the effect of spreading policyholder risk. Id. at 349. The McGuigan court also focused on the fact that the statute provides an alternative remedy to the exclusive remedies provided in ERISA.

Id. The McGuigan court concluded, as has every court that has looked at this issue, with the lone exception of the opinion of the Honorable Clarence Newcomer in Rosenbaum, that nothing in recent Supreme Court jurisprudence was intended to overrule Pilot Life's holding that a statute cannot impose an alternative remedy to those remedies provided in ERISA's exclusive remedial scheme. Id. at 349-50.

Because Pennsylvania's bad faith statute would impose an alternative remedial scheme upon ERISA plans, ERISA preempts Plaintiff's bad faith claims, and Aetna is entitled to judgment in its favor on those claims.

## II.     THERE IS NO EVIDENCE OF BAD FAITH

ERISA preempts Plaintiff's bad faith claim, and thus Plaintiff cannot state a claim as a matter of law. Notwithstanding this, the undisputed facts of this case demonstrate that Aetna did not act in "bad faith." Plaintiff admits that in order to demonstrate that Aetna acted in bad faith, she will have to demonstrate that Aetna had no reasonable basis for terminating Plaintiff's benefits, and that Aetna knew or recklessly disregarded its lack of a reasonable basis in terminating Plaintiff's benefits.

It is undisputed that Plaintiff was not under the care of a physician for CFS. It is undisputed that the disability Plaintiff claims was caused by CFS. It is undisputed that the Plan requires Aetna to refuse to certify a period of disability, and thus terminate benefits, where the Plaintiff is not under the care of a physician. It is undisputed that a claimant is under the care of a physician, under the terms of the Plan, when she is being treated by the physician for the condition that caused her disability. It is undisputed that Plaintiff's treating physician, Dr. Schwartz, is a psychiatrist. It is undisputed that psychiatrists do not treat CFS, and equally undisputed that even if they do, this psychiatrist stated that he was not treating this Plaintiff for

11

CFS. Finally, it is undisputed that Aetna relied upon the terms of the Plan requiring it to refuse to certify a period of disability where the claimant is not under the care of a physician for the condition that disabled her in terminating Plaintiff's benefits.

Accordingly, Aetna had a reasonable basis for terminating Plaintiff's benefits. In fact, Aetna had no choice but to terminate Plaintiff's benefits under the terms of the Plan.

## CONCLUSION

For all the foregoing reasons, Aetna respectfully requests this Court to grant its Motion for Summary Judgment, dismiss Plaintiff's claim with prejudice, and award Aetna its reasonable attorney's fees pursuant to ERISA.

Respectfully submitted,

OF COUNSEL:  /s/ Patricia C. Collins
ELLIOTT REIHNER
SIEDZIKOWSKI & EGAN, PC    PATRICIA C. COLLINS
Union Meeting Corporate Center V
925 Harvest Drive
Blue Bell, PA 19422
977-1000

DATED: September 5, 2003

## CERTIFICATE OF SERVICE

I, Patricia C. Collins, Esquire, hereby certify that on this date I served the foregoing upon the following and in the manner indicated below:

**Via First Class Mail, Postage Prepaid**

Theodore A. Schwartz, Esquire
1620 Locust Street
Philadelphia, PA 19103-6392

/s/ Patricia C. Collins
Patricia C. Collins, Esquire

DATED:   September 5, 2003