IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELE RICCI** | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | 02-CV-4330 |
| | : | |
| **AETNA, INC. d/b/a AETNA U.S. HEALTHCARE and AETNA LIFE INSURANCE COMPANY** | : | |
| | : | |
| | : | **Electronically Filed** |
| Defendants. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED FACTS**

Defendant, Aetna Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life Insurance Company ("Aetna"), by and through its undersigned counsel, hereby submits this Response to Plaintiff's Statement of Undisputed Facts:

1.  Aetna agrees that Plaintiff brought an action pursuant to ERISA and Pennsylvania's Bad Faith statute, and that Exhibit "A" is a true and correct copy of Plaintiff's Amended Complaint. However, Aetna specifically disputes the **legal conclusion** contained in paragraph 1 that ERISA provides for civil remedies in the amount of $100.00 per day in addition to other penalties. ERISA only provides for a civil remedy of $100.00 per day where the Plaintiff requests documents from the Plan Administrator, and those documents are not produced within 30 days. 29 U.S.C. §1132(a)(2)(B). Plaintiff has made no allegation that she requested plan documents from the Plan Administrator, Quest Diagnostics, or that such documents were not produced. Further, Quest Diagnostics is not a party to this case. Thus, this provision has no application to this case.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted.

6. – 7.  Admitted.  In addition, attached as Exhibit "A" to Aetna's Statement of Undisputed Facts is the version of the Plan applicable at the time that Plaintiff's benefits were terminated.

8.  Aetna disputes this paragraph.  Plaintiff, if disabled, was entitled to receive benefits under the terms of the Plan, until the Plan required a termination.  Assuming that disability continues, Plaintiff's benefits could be terminated if, for example, her disability was due, to any extent, to a mental condition, regardless of whether or not she remains disabled.  The claim could be terminated if Plaintiff refused to comply with requests for independent medical examinations, or provide appropriate medical information, regardless of whether or not she remains disabled.  The Plan offers many scenarios where a person who is still disabled may nevertheless have their benefits terminated.

9. – 14.  Admitted.

15.  Aetna disputes Plaintiff's characterization of this contract term.  Section 9 states: "The terms and provision of this Contract [the Administrative Services Contract between MetPath Inc. and Aetna] shall be construed and enforced according to the laws of the State of Connecticut."  The Contract says nothing about the laws applicable to determinations made under the terms of the Long Term Disability Plan, because, as a matter of law, ERISA would preempt Connecticut law on those issues.

16. Assuming that Plaintiff is referring to Exhibit "B," Aetna refers the Court to Exhibit "A" to Aetna's Statement of Undisputed Facts, which contains essentially the identical language.

17. – 20. Admitted.

21. Admitted with the addition that Dr. Schwartz is a psychiatrist.

22. Admitted with the addition that Plaintiff saw Dr. Youakim one time only for a sleep study, and that Plaintiff saw Dr. Goldberg five (5) times in 1995, and at no time thereafter during her certified period of disability.

23. Aetna disputes this paragraph. Aetna did not "hand pick" its medical experts. To the contrary, with respect to Independent Medical Examinations ("IME"), Aetna worked with independent contractors, who selected the physician to conduct the examination and scheduled the appointment. AR 133 – 35, 480, 503, 511, 527, 529, 539, 540, 559, 561, 573, 584, 589, 597, 613, 636, 644. In addition, with respect to the records review, Aetna worked with an independent contractor who selected the physicians to review the documents. AR 448.

24. Aetna admits that the physicians listed either reviewed Plaintiff's medical records or conducted an independent medical examination of Plaintiff. However, Aetna did not select those physicians to undertake the review. See response to paragraph 23 above.

25. Admitted.

26. Aetna disputes some of the allegations of this paragraph. Dr. Bonner is **not** a psychiatrist. Aetna admits the balance of the allegations of this paragraph.

27. Admitted, with the addition that Dr. Kemler was a physician who worked for Aetna as an independent contactor to assist with Aetna's review of medical evidence received with respect to claims for benefits.

28.   Aetna disputes this paragraph.  Dr. Kemler was an independent contractor for Aetna.

29.   Aetna disputes this paragraph, and specifically takes issue with Plaintiff's failure to provide Dr. Kemler's exact language to this Court.  Dr. Kemler noted in March of 1997 that the case was confusing because of conflicting medical evidence regarding the origin of Plaintiff's disability.  AR 310.  He notes that Plaintiff has "subjective" symptoms of CFS, and requests an IME.  Id.  In December of 1998, Dr. Kemler noted that there were two opposing opinions on whether Plaintiff could return to work, and therefore recommended another IME.  AR 328.  In May of 2000, Dr. Kemler concluded that Plaintiff could return to work.  AR 351.  In January of 2001, Dr. Kemler concluded that if Plaintiff's blood tests as recommended by Dr. Korzeniowski were negative then Plaintiff was not disabled.  AR 384.  These statements are not "equivocal" at all.  Dr. Kemler reviewed the medical evidence before him and concluded that Plaintiff was not disabled.

30.   Aetna disputes the allegations of this paragraph.  Dr. Stumacher stated that Plaintiff conformed to the standard CDC criteria for CFS "at least by history."  He stated: "her present subjective and objective status are somewhat clouded by her second trimester pregnancy."  AR 331.  He found continuation of disability justified, until reevaluation after the birth of her child.

31.   Aetna disputes the allegations of this paragraph.  Aetna forwarded a request to NMR for a medical records review.  NMR selected Dr. Moyer and Dr. Slack to review the claim. AR 143, 144.

32.   Admitted.

33. Aetna disputes the allegations of this paragraph. Dr. Korzonioski concluded that "She [Plaintiff] voices numerous complaints that are consistent with the 'syndrome' of chronic fatigue, but there is no objective data to support the diagnosis." AR 370. Dr. Korzoniowski then stated that if certain objective blood tests were normal, Plaintiff was not disabled. Id. Dr. Korzoniowski stated that she expected those tests would be normal, indicating her belief that Plaintiff did not have Chronic Fatigue Syndrome.

34. – 35. Admitted.

36. Aetna disputes the allegations of this paragraph. Dr. Schwartz did not state that the "condition" to which he was referring was CFS.

37. Plaintiff refers to a writing. Aetna admits that these are the words used to define "sequelae" in the Webster's II Medical Dictionary.

38. Plaintiff refers to a writing. Aetna admits these are the words used to define "cause" in Webster's II New Collegiate Dictionary.

39. Admitted.

40. Aetna disputes the allegations of this paragraph. Ms. Tedeschi terminated Plaintiff's claim based on the following: "Since you are being treated by DR. Schwartz for a psychological / psychiatric condition, and you are not being treated by a physician for a physical disability, your Long Term Disability benefits will terminated as of July 1, 2001." AR 222.

41. Aetna disputes the allegations of this paragraph. Aetna followed up with Dr. Korzeniowski's recommendation by requesting the test results from Plaintiff's treating physician, her psychiatrist Dr. Schwartz. Dr. Schwartz had not performed those blood tests, and did not perform them or refer Plaintiff to a physician to perform them pursuant to Aetna's request.

42. – 44.    Admitted.

45.    Admitted, with the exception that there is no emphasis in the original document. AR 249.

46. – 49.    Admitted.

50.    Admitted.

51.    Admitted with the addition that Ms. Tedeschi testified that she sent all medical information to a nurse or a doctor to review, in this case, Dr. Kemler. Deposition of Michelle Tedeschi at p. 86. Dr. Kemler's conclusions and recommendations are then included in the file and in the computer screens for Ms. Tedeschi to review. See e.g., AR 23, 102, 114, 148.

52.    Admitted.

53.    Aetna disputes the allegations of this paragraph. The allegation includes no citation to the record. Ms. Tedeschi terminated Plaintiff's claim based on the following: "Since you are being treated by Dr. Schwartz for a psychological / psychiatric condition, and you are not being treated by a physician for a physical disability, your Long Term Disability benefits will terminated as of July 1, 2001." AR 222.

54.    Admitted, with the addition that Plaintiff was not under the care of any other physician at the time her benefits were terminated.

55.    Aetna disputes the allegations of this paragraph. Plaintiff includes no citations to the record to support these allegations. Further, because Plaintiff never received regular medical treatment for CFS, there is no way of knowing whether or not Plaintiff's condition changed during her certified period of disability.

56. – 58.    Admitted.

59. Aetna admits that Ms. Williams testified that the basis for terminating Plaintiff's benefits was the fact that she received no treatment for her physical condition of CFS, and that she had exhausted any benefits for a mental / nervous condition. Aetna disputes the allegations that none of the medical records supports disability due to a mental disorder. The record is replete with citations to Plaintiff's depression and somatoform disorder (see e.g., AR 4, 23, 48, 66, 94, 112, 164, 298300, 301, 303), and Plaintiff was treated for the entire certified period of disability by a **psychiatrist**.

60. Admitted.

61. Admitted.

62. Admitted with the addition that Ms. Williams testified that she reviewed the entire file as part of her appeal, including all of Dr. Kemler's notes and other medical information contained therein. Deposition of Tammy Williams at p. 12.

63. Aetna disputes the allegations of this paragraph. Ms. Williams testified that she probably looked the term up at the time, that she could not remember its exact meaning at the time of the deposition, and that it referred to "part of" her condition. Deposition of Ms. Williams at p. 13. Ms. Tedeschi testified that she did not know the meaning of the term at the time of the deposition. Deposition of Ms. Tedeschi at p. 99. She was not asked, and she did not testify as to whether she would have looked up the term at the time of the termination. The records show that the term was unreadable to her at the time she received the note from Dr. Schwartz, but she used the word "part" in describing his statement. AR 186. Both Ms. Williams and Ms. Tedeschi understood that Dr. Schwartz was stating that there was a psychological or psychiatric "part" of her CFS, and that he was only treating that part of her disability.

64. Aetna disputes the allegations of this paragraph regarding what Ms. Williams knew in December of 2001. Ms. Williams testified that were psychiatric diagnoses in the file, and that she would have reviewed the entire file in reviewing Plaintiff's appeal. Deposition of Ms. Williams at p. 12. The remainder of this paragraph is admitted.

65. Admitted.

66. Aetna disputes the legal conclusions contained in this paragraph. Aetna filed a Motion to Dismiss raising and preserving objections to Plaintiff's ERISA and bad faith claims, and those paragraphs and counts of the complaint are thus not admitted. Further, Aetna has filed a Motion for Enlargement of Time to file its Answer, based on the close timing of the Court's Order denying an appeal of the Court's ruling on the Motion to Dismiss, and the scheduling of deadlines for dispositive motions. Filing the answer will work no prejudice on Plaintiff, because all of Aetna's defenses are preserved in its Motion to Dismiss. Further, under these circumstances, Aetna's Motion for Summary Judgment serves as a responsive pleading. Aetna hereby incorporates by reference its Motion for Enlargement of Time and accompanying Memorandum of Law as if more fully set forth.

67. – 72. Aetna disputes the legal conclusions of these paragraphs. There is no cite to the record, and certainly the paragraphs do not contain factual allegations as required by the Court's Order. Further, Aetna incorporates by reference its Motion for Summary Judgment which demonstrates that Aetna properly applied the terms of the Plan to Plaintiff' claims, and that Pennsylvania's "bad faith" statute has no application to this case as it is preempted by ERISA. Aetna also refers the Court to paragraph 66 above.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL:<br>ELLIOTT REIHNER<br>SIEDZIKOWSKI & EGAN, PC | /s/ Patricia C. Collins_____<br><br>PATRICIA C. COLLINS<br>Union Meeting Corporate Center V<br>925 Harvest Drive<br>Blue Bell, PA  19422<br>977-1000 |

DATED: September 5, 2003

## CERTIFICATE OF SERVICE

I, Patricia C. Collins, Esquire, hereby certify that on this date I served the foregoing upon the following and in the manner indicated below:

**Via First Class Mail, Postage Prepaid**

Theodore A. Schwartz, Esquire
1620 Locust Street
Philadelphia, PA 19103-6392

/s/ Patricia C. Collins
Patricia C. Collins, Esquire

DATED:     September 5, 2003