IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELE RICCI | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | 02-CV-4330 |
| | : | |
| AETNA, INC. d/b/a AETNA U.S. HEALTHCARE and AETNA LIFE INSURANCE COMPANY | : | |
| | : | Electronically Filed |
| Defendants. | : | |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
REQUEST FOR REMOVAL OF CASE FROM CIVIL SUSPENSE**

Defendants, Aetna Inc., d/b/a/ Aetna U.S. Healthcare and Aetna Life Insurance Company ("Aetna"), by and through its undersigned attorneys, hereby file this Supplemental Memorandum in support of its Motion for Summary Judgment, which is presently pending before this Court.

**I.   INTRODUCTION**

The parties filed their respective Motions for Summary Judgment in this matter on July 28, 2003. By Order dated October 30, 2003, this Court placed this matter in civil suspense after a notice of appeal was filed in *Barber v. Unum Life Insurance Co. of America*, 383 F.3d 134 (3d Cir. 2004). The issue to be decided by the Third Circuit in *Barber* was whether a bad faith claim based on a denial of insurance benefits is preempted by Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* ("ERISA"), an issue that was also present this matter at that time. This case remains in civil suspense, and the parties' motions for summary judgment are still pending.

On November 3, 2003, several days after this case was placed in civil suspense, the United States Supreme Court granted a petition for a writ of certiorari in another case of great magnitude captioned *Aetna Health Inc. v. Davila*. On June 21, 2004, the Supreme Court decided *Davila*, finding that the state law claims asserted by the plaintiffs against their insurance carriers were completely preempted by ERISA. *Aetna Health Inc. v. Davila,* 124 S.Ct. 2488 (2004).

Shortly after the Supreme Court's decision in *Davila,* on July 27, 2004, the undersigned counsel wrote a letter to this Court, setting forth Aetna's position that *Davila* had a dispositive impact on Plaintiff's bad faith claim, and asking the Court to remove the matter from civil suspense to rule on the pending motions. On September 7, 2004, echoing the Supreme Court's ruling in *Davila,* the Third Circuit issued an opinion in *Barber* holding that bad faith claims, such as that attempted by Plaintiff here, are preempted by ERISA. *See Barber,* 383 F.3d at 144. Because the issues that caused the Court to place this matter in civil suspense have now been resolved, there is no longer any reason for this matter to remain in civil suspense. Accordingly, by this memorandum, Aetna renews its request that the Court remove this matter from civil suspense to rule on the pending motions.

Additionally, there have been several other recent pertinent legal developments, in the form of additional case law on point, that further confirm the invalidity of Plaintiff's claim, even when properly cast as a denial of benefits claim under ERISA. These additional authorities are discussed in this memorandum, below, which Aetna respectfully submits in order to further confirm the grounds for dismissal of Plaintiff's claims, as set forth in Aetna's Motion for Summary Judgment, and as validated in recent legal opinions by various courts.

II. <u>**ARGUMENT**</u>

    A. <u>**Aetna Respectfully Requests That This Case Be Removed from Civil Suspense Since The Third Circuit Has Decided *Barber v. Unum.***</u>

In an Order dated October 30, 2003, this Court placed this case in civil suspense due to the fact that the issue of whether ERISA preempts Pennsylvania's bad faith statute was then "unsettled" in the Third Circuit. *See* Order dated 10/30/03. In its letter to the Court dated July 27, 2004, Aetna respectfully requested that this case be removed from civil suspense and the summary judgment motions decided, due to the impact of the Supreme Court's landmark *Davila* decision on this case. Aetna now respectfully renews this request, and submits that the Third Circuit's decision in *Barber v. Unum* resolves the split among Eastern District judges that existed at the time the summary judgment motions were filed, and removes any and all doubt about the proper disposition of a bad faith claim based on a denial of benefits under ERISA.

In its summary judgment motion, Aetna argued, *inter alia,* that Plaintiff's bad faith claim must be dismissed because it is preempted by ERISA. Since the Third Circuit has now voiced its agreement on this issue, and has given the courts explicit guidance on the disposition of a bad faith claim like that asserted by Plaintiff here, there is no longer any reason for this case to be in civil suspense and Aetna's summary judgment motion is ripe for decision. As discussed below, it is now clear as a matter of law that Plaintiff's bad faith claim cannot survive as a matter of law, and must be dismissed.

    B. <u>**The Third Circuit's Decision in *Barber v. Unum* Mandates Dismissal of Plaintiff's Bad Faith Claim.**</u>

In *Barber,* the Third Circuit examined a plaintiff's claim that mirrors the factual circumstances and legal claims alleged by Plaintiff in this case. There, an employee whose long term disability benefits were terminated asserted state law claims including breach of contract and

3

bad faith against the insurer who terminated the benefits. *Barber,* 383 F.3d at 136. Applying the guiding principles set forth in *Pilot Life* [*Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)]*, Rush Prudential* [*HMO, Inc. v. Moran*, 122 S. Ct. 2151 (2002)]*,* and, most recently, *Davila,* the Third Circuit in *Barber* concluded that Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, is preempted "because it is a remedy that allows an ERISA-plan participant to recover punitive damages for bad faith conduct by insurers, supplementing the scope of relief granted by ERISA. . .." *Id.* at 140-41.

As in *Davila*, Plaintiff's claims here clearly fall within the scope of ERISA's civil enforcement mechanism because Plaintiff seeks to recover benefits due under the terms of an employee welfare benefit plan and/or to enforce her rights under the terms of the plan. *See id.*; *Russo v. Abington Memorial Hosp.*, 881 F. Supp. 177, 181 (E.D. Pa. 1995) (citing 29 U.S.C. § 1132(a)(1)(B)); *Institute of Penn. Hosp. v. Travelers Ins. Co.*, 825 F. Supp. 727, 731 (E.D. Pa. 1993) (plaintiff-hospital's claim for payment in full for the medical services and benefits pursuant to an employee benefit plan preempted by ERISA.). *See also Pilot Life*, 481 U.S. at 41 (common law contract and tort claims preempted by ERISA); *Metropolitan Life*, 481 U.S. at 62-63 (common law contract and tort claims preempted by ERISA); *Shiffler v. Equitable Life Assurance Society of the United States*, 838 F.2d 78, 82 (3d Cir. 1988) (breach of contract claim preempted by ERISA); *Garner v. Capital Blue Cross*, 859 F. Supp. 145, 148 (M.D. Pa. 1994) (claims for negligent denial of benefits preempted by ERISA), *aff'd*, 52 F.3d 314 (1995); *Arber v. Equitable Beneficial Life Insurance Co.*, 848 F. Supp. 1204, 1216-17 (E.D. Pa. 1994) (breach of contract claim preempted by ERISA).

To the extent Plaintiff relied upon the decision in *Rosenbaum v. Unum Life Ins. Co.,* 2002 WL 1769899 (E.D. Pa. Jul. 29, 2002) in filing a purported "bad faith" claim against Aetna, the *Barber* Court has now confirmed that any such reliance was misplaced. *See Barber,* 383 F.3d at

141-42.[1]   Prior to the *Barber* Court's recent confirmation that claims brought pursuant to Pennsylvania's bad faith statute are not "saved" from ERISA preemption under §514(b)(2)(A), other plaintiffs like Ricci have argued that 42 Pa.C.S. §8371 is a law that "regulates insurance," and therefore claims asserted thereunder are "saved" from preemption.  However, relying upon Supreme Court precedent, including the recent decision in *Aetna Health Inc. v. Davila*, the Third Circuit held that any such argument for "saving" a bad faith claim is "unavailing." *Id.* (citing *Davila,* 124 S.Ct. at 2500).

Citing *Pilot Life* and *Davila,* the Third Circuit emphasized the Supreme Court's finding that "Congress' policy choices reflected in ERISA's exclusive remedial provision would be undermined by state laws allowing alternate remedies[.]" *Id.* at 141.  Thus, the Third Circuit concluded that "even if 42 Pa.C.S. §8371 were found to 'regulate insurance' under the saving clause, it would still be preempted because the punitive damages remedy supplements ERISA's exclusive remedial scheme.'" *Id.*

Of equal importance, especially given Plaintiff's reliance on the *Rosenbaum* decision, the Third Circuit held that 42 Pa.C.S. §8371 does **not** "regulate insurance." The *Barber* Court explained that the district court erred in applying the Supreme Court's decision in *Miller* [538 U.S. 329] to find that Pennsylvania's bad faith statute "regulates insurance" under the savings clause. *Id.* at 141-43.  "[U]nder the *Miller* test, Pennsylvania's bad faith statute does not 'regulate insurance' within the meaning of ERISA's saving clause and is expressly preempted by ERISA." *Id.* at 144.

The Third Circuit's decision in *Barber* effectively affirms the decisions of numerous other courts in this district, which have consistently found such claims to preempted by ERISA, and not

---

[1] In *Rosenbaum v. Unum Life Insurance Co.*, 2002 WL 1769899 (E.D. Pa. Jul. 29, 2002), the Honorable Clarence Newcomer held that bad faith claims were not preempted by ERISA because bad faith claims fell into ERISA's "savings" clause.

5

"saved" therefrom. *See, e.g., Campbell v. Prudential Insurance Co. of America*, 2002 WL 462085, at *1 (E.D. Pa. March 25, 2002 (Ludwig, J.) (bad faith, declaratory judgment and breach of contract claims preempted); *Cannon v. The Vanguard Group*, 1998 WL 512935 at *3 (E.D. Pa. 1998) (Reed, J.) (bad faith claims preempted, listing cases); *Rallis v. Transworld Music Corp.*, 1994 WL 96264 at *2-*4 (E.D. Pa. 1994) (Buckwalter, J.) (declaratory judgment, contract and bad faith claims preempted); *Murphy v. Metropolitan Life Ins. Co.*, 152 F. Supp. 2d 755, 758 (E.D. Pa. 2001) (bad faith and consumer protection claims preempted); *Brooks v Educators Mutual Life Ins. Co.*, 206 F.R.D. 96, 102 (E.D. Pa. 2002) (breach of contract and bad faith claims preempted); *Miller v. Aetna Healthcare*, 2001 WL 1609681 at *5 (E.D. Pa. Dec. 12, 2001) (Waldman, J.) (unfair trade practices and bad faith claims preempted).

Thus, there is no longer any good law upon which Plaintiff could rely to "save" her bad faith claim from preemption, and Plaintiff's "bad faith" claim simply cannot survive. As the Third Circuit has recently confirmed, applying Pennsylvania's bad faith statute to ERISA plans would improperly set up an alternative or additional form of relief in violation of ERISA's purpose to provide exclusive remedies for violations of the guarantees of ERISA and of plans promulgated pursuant to ERISA. Pennsylvania's bad faith statute is preempted by ERISA, and Plaintiff's bad faith claim must be dismissed.

   **C. Aetna Properly Concluded That Plaintiff Was Ineligible for Continued Long Term Disability Benefits Under the Plan.**

As set forth in Aetna's original moving papers, Aetna had ample grounds upon which to terminate Plaintiff's long term disability benefits. *See* Aetna's Motion for Summary Judgment and Memorandum of Law in support thereof, which described in detail the various grounds for termination of benefits including, *inter alia,* that substantial medical evidence did not support a finding of chronic fatigue syndrome ("CFS"), that Plaintiff never provided the results of blood tests

or any other evidence of a physical condition supporting her disability, and that Plaintiff never sought treatment for the physical condition of CFS. *Id.*

Although the Plan places an obligation on Plaintiff to obtain and continue treatment for her disabling condition, and to provide evidence of her continuing disability in exchange for continued entitlement to the benefits,[2] it is undisputed that Plaintiff was not under the care of any physician for the physical condition that purportedly caused her disability - - CFS. Rather, Plaintiff was receiving treatment for a mental condition from a psychiatrist, Dr. Schwartz, for undifferentiated somatoform disorder or the "sadness and anxiety" caused by her CFS.

Thus, although Dr. Schwartz may have been treating Plaintiff for the sadness and anxiety she experienced as a result of her chronic fatigue, no physician was treating Plaintiff for the underlying physical condition of CFS, the allegedly disabling condition. Under the terms of the Plan, Aetna correctly concluded that Plaintiff was not under the care of a physician for her alleged "disabling condition" -- CFS. The bottom line is that Plaintiff cannot have it both ways: If she claims her disability was as a result of the depression and anxiety she was experiencing, then her benefits were terminated properly on the basis of the plan provision which places a 24-month limit on benefits for disability caused *to any extent* by a mental condition.[3] On the other hand, if she claims that her disability is not, in any substantial way, caused by her mental condition, then she clearly was not and has not been under the care of a physician for her disabling condition, CFS.

---

[2] Here, the Plan states that: "You will not be deemed to be *under the care of a physician* on any day more than 31 days before the date he or she has seen and treated you in person *for the disease or injury that caused the disability*." *See* Exhibit "A" to Aetna's Statement of Undisputed Facts at p. 3 (emphasis added). The Plan further states: "Certification of a period of disability will be denied if any one of the following apply: * * * You are not under the care of a physician. *Id.* Under the terms of the Plan, the certified period of disability ends on "the date you cease to be under the care of a physician." *Id.* at p. 6.

[3] The Plan provides that "[a] "Certified Period of Disability" will end after twenty-four months of benefits if the claimant's disability is caused *to any extent* by a mental condition." (emphasis added)

In the nearly two years that have passed since the filing of Aetna's summary judgment motion, there have been a number of court decisions dealing with the issues raised in this matter that confirm the propriety of Aetna's decision and this new authority should be considered by this Court in deciding the parties' summary judgment motions. These include cases dealing with the weight to be given to the opinion of the claimant's attending physician, the need for a disability claimant to be under the care of a physician for the disabling condition, and the recognition that the mere fact that a claimant has CFS or ailments like it (*e.g.*, fibromyalgia) does not – without convincing evidence of actual impairment – demonstrate that one is disabled and entitled to benefits. In addition to the cases cited by Aetna in its Memorandum of Law supporting its Motion for Summary Judgment, Aetna submits the following authority in further support of its request that summary judgment be entered in its favor.

In *Johnson v. Long Term Disability Plan,* 2004 WL 2318901 (N.D. Ill. Oct. 8, 2004), the court granted the defendant plan's motion for summary judgment based on its finding that the defendant's decision to terminate benefits was not arbitrary and capricious. *Id.* at *11. As in this case, the plaintiff in *Johnson* was no longer eligible for benefits because she did not comply with the Plan's requirement that she receive proper medical care for the alleged disabling condition. *Id.* at *9-10. Notably, the court opined that **the purpose of such plan provisions is "to ensure that a disabled participant take appropriate steps to restore her health, if possible, and that the Plan avoid paying unwarranted benefits.**" *Id.* at *10. Thus, if a participant is not in compliance with the Plan's requirements, it is entirely proper for the claims administrator to find that she is ineligible for continued benefits. *Id.* See also *LaPrease v. Unum Life Ins. Co. of America,* 347 F.Supp.2d 944 (W.D. Wash. 2004) ("Further, Mr. LaPrease did not provide evidence that he was under the regular care of a physician as required by the Plan."). *Teplick v. Boeing Company*

*Employee Health and Welfare Benefit Plan,* 2004 WL 1058172 (D. Or. May 11, 2004) (finding Aetna, as claim administrator, "justified in terminating benefits" based upon finding that the claimant failed in his obligation under the plan to remain under the care of a physician and supplement the medical evidence as required by Aetna).

Moreover, given that Aetna has been granted discretionary authority to administer claims for benefits under the Covance Plan, the Court may not substitute its judgment for Aetna's and assume the role of claims administrator, *see Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993), but must grant deference to Aetna's judgment in assessing how much weight Aetna chose to afford the treating physician's statement.  In assessing a claims administrator's decision to terminate long term disability benefits based on alleged fibromyalgia (a condition often likened to CFS due to a lack of objective criteria supporting the condition),[4] the Ninth Circuit Court of Appeals recently explained that a claims administrator, like Aetna, must scrutinize a treating physician's conclusory finding of disability because

> [s]omebody has to make a judgment as to whether a medical condition prevents a person from doing her work, and the governing instrument assigns the discretion to the claims administrator.  With a condition such as fibromyalgia [or CFS], where the applicant's physicians depend entirely on the patient's pain reports for diagnosis, their *ipse dixit* cannot be unchallengeable.  That would shift the discretion from the administrator, as the plan requires, to the physicians chosen by the applicant . . . .  It is not for [the] court to decide that fibromyalgia [or CFS] should be treated by ERISA [claims] administrators as disabling in a given case.  That is a medical and administrative judgment committed to the discretion of the [claims] administrator based on a fair review of the evidence.

*Jordan v. Northrop Grumman Corp Welfare Benefit Plan*, 370 F.3d 869, 878, 880 (9th Cir. 2004).  Likewise, the Third Circuit recently confirmed that "[u]nder the Supreme Court's recent

---

[4] Like chronic fatigue syndrome, "fibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Jordan,* 370 F.3d at 872.  Also like chronic fatigue syndrome, fibromyalgia is "a physical rather than a mental disease." *Id.* at 873.

9

decision in *Black & Decker Disability Plan v. Nord,* 538 U.S. 822 (2003),[5] administrators of ERISA plans are not obligated to accord special deference to the opinion of a claimant's treating physician.  Metlife [the claims administrator] is therefore justified in placing reliance on the opinions of its own consulting doctors and need not provide a special explanation of its decision to do so."  *Nichols v. Verizon Communications Inc.,* 2003 WL 22384772 (3d Cir. 2003) (citing *Black & Decker*).

Similarly, Aetna here was not required to give special deference to the findings of Plaintiff's treating *psychiatrist* that Plaintiff was disabled.  To the extent Aetna relied on its own medical consultants in deciding to terminate Plaintiff's claim, and did not defer to the opinion of Plaintiff's treating psychiatrist, such reliance was appropriate and entirely proper under the law, as recently articulated by the Supreme Court and echoed by the Third Circuit.  Moreover, as discussed above, Aetna was clearly entitled to find that Plaintiff was ineligible for benefits under the plan because she was not under the care of a physician for the physical condition of chronic fatigue syndrome.

Finally, as many recent cases have recognized, even if Plaintiff actually has chronic fatigue syndrome,[6] this does not mean that she is automatically eligible for benefits under the Plan.  Rather, the appropriate inquiry is whether Plaintiff is totally disabled.  To be sure, not

---

[5] In *Black & Decker,* the Supreme Court recognized the need to encourage employers to adopt benefit plans by allowing them the freedom to administer plans in a manner that they can afford to fund, such as by reliance on opinions of reviewing physicians.

[6] In plaintiff's case even this is not clear, as her CFS diagnosis appears to be based solely on her own reports of fatigue (which could easily be the result of taking care of her two young children).  Plaintiff never provided blood tests, as requested by Aetna, to rule out the possibility of her alleged ailments being the result of some other physical cause or disease.  *See* Statement of Facts and Aetna's original moving papers.

everyone with CFS is affected the same way or to the same degree.[7] According to the Center for Disease Control ("CDC"):

> Some [CFS] patients recover to the point that they can resume work and other activities, but continue to experience various or periodic CFS symptoms. Some patients recover completely with time, and some grow progressively worse.

Chronic Fatigue Syndrome, at 5 CDC (May 2004) (http://www.cdc.gov/ncidod/diseases/cfs/info.htm). The administrative record of Plaintiff's claim, submitted with Aetna's original motion, contains no credible evidence, other than statements from the psychiatrist (who was not treating her CFS but treating only the sadness and depression that accompanied it) based on her subjective symptoms, that she was physically incapable of performing the tasks of a reasonable occupation.

Consistent with this view, various courts, including the Third Circuit and Eastern District courts have recently repeatedly found that that persons diagnosed with CFS are not "totally disabled." *See, e.g., Tesche v. Continental Cas. Co.*, 2004 WL 1973832, at 2-3 (3d Cir. 2004) (upholding denial of LTD benefits despite diagnoses of CFS); *Crosby v. Barnhart*, 2004 WL 1096413, at 1-2 (3d Cir. 2004) (despite having CFS, claimant was not totally disabled under SSA); *Garside v. Barnhart*, 2004 WL 1510029, *2 (10th Cir. 2004) (affirming judgment of the district court that despite CFS and other conditions, disability benefits were properly denied); *Holiday v. Barnhart*, 2003 WL 22287408, at 1-3 (3d Cir. 2003) (despite diagnosis of CFS, claimant was not totally disabled); *Wallace v. Barnhart*, 2003 WL 21640568, *8 (E.D. Pa. 2003) (agreeing with ALJ's determination that, despite CFS, plaintiff was able to perform light work and thus able to perform his previous employment).

---

[7] As one court aptly explained, "[i]t cannot be assumed that everyone claiming to be totally disabled [due to CFS] is, in fact, totally disabled." *Ingram v. Martin Marietta Long Term Disability Income for Salaried Employees of Transferred GE Operations,* 35 F.Supp.2d 1190, 1195 (C.D. Cal. 1999).

11

Thus, very recent decisions from various courts (as well as the case law cited by Aetna in its opening briefs) confirms that Aetna's decision to terminate Plaintiff's long term disability benefits was entirely proper under the facts and the law, and cannot, under any circumstances, be construed as arbitrary and capricious. There can be no genuine dispute that Aetna is entitled to summary judgment on Plaintiff's claims.

### III.    CONCLUSION

For all the foregoing reasons, as well as those set forth in Aetna's Motion for Summary Judgment, its Brief in support of the Motion, its Reply Brief, and its Opposition to Plaintiff's Motion for Summary Judgment, Aetna respectfully requests that this Court remove this case from civil suspense and enter an Order dismissing Plaintiff's claims.

Respectfully submitted,

/s/ Kathryn M. Schilling

ELLIOTT GREENLEAF  
    & SIEDZIKOWSKI

KATHRYN M. SCHILLING  
Union Meeting Corporate Center  
925 Harvest Drive  
Blue Bell, PA  19422  
(215) 977-1000

DATED:  May 2, 2005

Counsel for Defendants

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this day a copy of the foregoing is being served upon the persons and in the manner indicated below:

**U.S. Postal Service, First Class Mail**

Theodore A. Schwartz, Esquire
1620 Locust Street
Philadelphia, PA 19103-6392

Counsel for Plaintiff

/s/ Kathryn M. Schilling
Kathryn M. Schilling, Esquire

DATED:  May 2, 2005